————————o————————

KENT and Another *v.* THE LIVERPOOL AND LONDON INSURANCE COMPANY.

INSURANCE.—MERCHANDISE.—The term "merchandise," in a policy of insurance against loss, &c., by fire on grain and other merchandise in each of two warehouses, which were kept by the assured, who were grain merchants, for the purpose of receiving and storing grain, was held not to include a platform scale, bedded in the floor of one of the warehouses, nor belting, nor a corn sheller, nor a beam-scale, which things had been dispensed with in the business, but which had not been offered for sale; nor tools, implements or articles of property purchased for use in the warehouses, as being necessary or convenient in the business, and which were used as occasion required.

APPEAL from the *Tippecanoe* Common Pleas.

ELLIOTT, J.—Suit by the appellant against the insurance company on a policy of insurance of $1,500, against loss or damage by fire on " grain and other merchandise, hazardous and not hazardous, contained in each of their two warehouses," &c., "on the *Toledo and Wabash R. R.*, at *Marshfield* station, *Indiana.*" The warehouses and their contents were consumed by fire.

Answer in denial of the complaint. The issue was tried by the court; finding for the defendant. Motion for a new

trial, because the finding was contrary to the law and evidence in the case, overruled. The plaintiffs appeal.

The only question presented in the case by the record and assignment of errors, is whether certain articles of property named in the schedule, or bill of particulars, filed with the complaint, under the state of facts shown by the evidence, were covered by the term "other merchandise," used in the policy?

The following are the items referred to:

1. 1 Fairbanks' platform scale.................................$175
2. 1 Beam scale................................................... 25
3. 2 Grain carts................................................... 100
4. 2 Corn shellers................................................ 200
5. 1 Cleaner....................................................... 75
6. 1 Cob carrier.................................................. 40
7. 100 Feet 6 inch belting...................................... 87
8. 40 " 5 " "               ............................... 28
13. 1 Set of Blocks.............................................. 25
14. 1 Stove....................................................... 10
15. 1 Wheelbarrow .............................................. 15
16. 1 Set trucks.................................................. 8

The evidence is all in the record. The only evidence bearing on the question under consideration was that given by *Kent,* one of the plaintiffs, who testified, in substance, as follows: That the first eight articles embraced in the schedule had been used in the warehouse for the purpose of operating it; they were tools, implements and fixtures used in the warehouse business, but most of them had been dispensed with, owing to alterations in the mode of operating the warehouse. Plaintiffs had dispensed with most of them before the policy issued, but he could not tell which they were. The belting, one of the corn shellers and beam scale were the only articles recollected by the witness that had been dispensed with. A set of blocks, the 13th item, did not belong to the warehouse, they were used for raising buildings and were in the warehouse for safe keeping. The wheelbarrow and trucks did not belong to the warehouse,

they were used by the plaintiffs about the station. The plaintiffs rebuilt the warehouse after the fire, and were operating it since that time without the use of any similar articles, except the cleaner. They had no use for the articles dispensed with, and would have sold them had an opportunity offered, except the wheelbarrow and trucks, which were used about the station. The sums set down in the schedule were the fair cash value of the articles destroyed. The witness understood the word "merchandise" to have its general meaning. It had no local meaning at *Marshfield.* The plaintiffs had done some commission business, but not much; they had been engaged mostly on their own account in buying, shipping and selling grain. On cross-examination the witness testified that the platform *Fairbanks'* scale was bedded down in the floor, and fastened by bolts to the floor timbers. The "beam scale" was sitting in some part of the house. It was got for the house in the first place and was used in it, but was afterwards dispensed with. They had never offered it for sale, to his recollection; never had any buyer for it. It and the platform scale were dispensed with because they adopted the plan of putting the grain in the cars without weighing, and having it weighed at *Toledo,* as they had to stand the weights there, any way. Plaintiffs had never offered any of the articles for sale; they were purchased in the first place for use, but were dispensed with as before stated. If they had wanted to weigh corn for the upper story, would have used the carts and platform scale. Would have used the cleaner and cob carrier again, if they had not been burned. The belting could not have been used, as the warehouse was changed. Witness thought the change was made before the policy was issued, and, on reflection, was positive that the belting was not in use when the policy was issued. They sometimes kept salt for sale in the warehouse, but had not for a year or two. The stove was used in the office of the warehouse; it sat on the floor, and the pipe passed through a stone into a flue. The belting had been laid aside from two to four years, and the "beam scale,"

from three to five years. The platform scale had not been in use for some months before the fire, though the warehouse had been up to, say a month before the fire. The stove would have been used again if the warehouse had not been burned. They had not had occasion to use the grain carts for sometime before the fire, as they did not weigh the grain before shipping. Did not use them, and their mode of doing business did not require their use. If a purchaser had offered, would have sold all the articles except the wheelbarrow and trucks. The witness lived at *Williamsport.* *A. B. Green* had charge of the warehouses at *Marshfield,* but they were strictly under witness' charge. *Marshfield* is nine miles from *Williamsport.* Witness went to *Marshfield* about once a week.

We are not aware that the term "merchandise" has any fixed and technical legal signification. *Webster* defines it thus: "The objects of commerce, wares, goods, commodities, whatever is usually bought or sold in trade." "By this term is understood all those things which merchants sell, either wholesale or retail, as dry goods, hardware, groceries, drugs," &c. Bouvier's Law Dic.

Here the principal business of the appellants, as the evidence shows, was that of purchasing grain, and shipping it to other markets for sale. They were grain merchants, and kept the warehouses for the purpose of receiving and storing grain purchased for market. The appellant's counsel disclaims making any question in this court as to the stove, wheelbarrow or trucks. The platform scale was evidently a fixture, and belonged to the realty. All the other articles for which compensation was claimed were tools, implements or articles of property purchased for use in the warehouse, as necessities or conveniences in the transaction of the appellants business, and, with the exception of the belting, one corn sheller and the beam scale, continued so to be used, as occasion required, until they were destroyed by fire. By a change in the mode of doing business, the belting,

corn sheller and beam scale were no longer used in connection with the business of the warehouses. Their use having been dispensed with they were thrown aside, or stowed away in the warehouses, and had thus lain idle for a period of from two to five years, during all which time no effort had been made to sell them, in fact they had never been offered for sale. True, Mr. *Kent* testified that they would have sold them if a purchaser had presented himself. As merchants they were not dealing in such goods, and we can scarcely suppose that they were regarded as articles of merchandise for sale.

It is contended by the appellants that the term "merchandise" may include every species of inanimate, movable property. If we concede the correctness of this proposition, still it does not determine this case, as the sense in which the term is to be understood must, in a great measure, depend upon the connection in which it is used. When applied to the goods of a merchant, it would seem only to relate to his stock in trade, or articles kept for sale. If applied to goods in transit, or in the temporary possession of a commission merchant for delivery to the owner, we see no reason why it should not cover articles of personal property, not designed by the owner for sale.

In the case at bar, we do not think the property in controversy was merchandise, within the meaning of the term as it was used in the policy of insurance.

The judgment is affirmed, with costs.

*J. A. Brown,* for appellants.

*H. W. Chase* and *J. A. Wilstach,* for appellee.