HARRY HARTWELL *vs.* CALIFORNIA INSURANCE COMPANY.

Androscoggin.    Opinion June 4, 1892.

*Insurance. Merchandise. Exceptions. Practice.*

The term "merchandise" in a policy of insurance against fire, may be used to
describe property intended for use, and not for sale.

In jury waived cases, when a party wishes to take exceptions to the illegal
introduction, or the improper use, of evidence, he should have the purpose
for which the evidence is admitted or used distinctly stated in the record;
for illegality is not to be presumed, it must be made to appear.

ON EXCEPTIONS.

This was an action upon a policy of insurance, wherein the
defendant insured the plaintiff in the sum of four hundred
dollars "on his stock of paints, oils, brushes, blinds, and such
other merchandise, while contained in second story of frame
building situate east side of Miller street, Auburn, Maine."

The defendant contended that certain articles, consisting of
set tackle and fall and ropes, sanding machine, fresco stencil

patterns, tools, knives, cans, pair of scales, measures, etc., amounting to one hundred and eighty-nine dollars and fifty cents, were not covered by its policy of insurance, because, according to the testimony of the plaintiff, they were not merchandise within the meaning of the law; they were articles kept for use and not for sale.

The case was tried before the presiding justice with the same right of exception as if tried before a jury.

The defendant seasonably objected to all testimony of the plaintiff as to his conversation with O. J. Hackett, who wrote the policy for the company's agent, relative to the intention of the parties as to what was to be covered and protected by the policy previous to the time it was issued; but the following testimony of the plaintiff was admitted by the presiding justice, subject to the defendant's objection:

"I was coming from the shop and met Hartwell on Main street. I said,—'I want to get my things insured down at the shop.' He said,—'We will go right down and insure them.' We went to the shop, went in, and I said,—'I want a policy to cover all the stuff I use in my business;' he looked around and we went out.

"Ques. Did he go into your place of business? Ans. He did.

"Ques. Later did he bring you the policy that you have identified? Ans. He did.

"Ques. What inquiry if any did you make on receiving the policy? Ans. I asked him if it was all right, if he had made out the policy to cover all the stuff I used in carrying on the business. He said he had."

The defendant also seasonably objected to the following testimony of N. I. Jordan, agent of the defendant company, which was admitted by the presiding justice, subject to objection:

"Ques. Is Mr. Hackett authorized by you to solicit risks and issue policies? Ans. He is.

"Ques. This particular policy signed N. I. Jordan,— that is not your signature? Ans. No, sir.

"Ques. Has Mr. Hackett, both prior to the issuing of this

and subsequently, been in the habit of signing your name to policies by your sanction? Ans. He has.

"Ques. These acts of his you have ratified? Ans. Yes, sir."

The defendant also seasonably objected to the following testimony of O. J. Hackett, which was admitted, subject to defendant's objection:

" Ques. Did Mr. Hartwell, in the summer of 1890, approach you and ask to have a policy written upon his stock? Ans. Yes, sir.

" Ques. Did you prior to writing this policy go to his (Hartwell's) place of business? Ans. I did.

"Ques. And looked the property over? Ans. Yes, sir.

" Ques. State what he said? Ans. I think he showed me round through the shop, and showed me several different things and principally said that he wished a policy that would cover everything that he had in the business.

"Ques. Did you later write this policy No 5288? Ans. Yes, sir.

" Ques. Did Mr. Hartwell dictate to you at all the phraseology of the policy     Ans. He did not.

" Ques. That is your own language, is it? Ans. Yes, sir."

The presiding justice ruled and found, as matter of law, that all the articles which the defendant claimed did not fall within the policy were covered by it, and gave the plaintiff judgment for the full amount sued for. To these rulings, findings and refusals the defendant took exceptions.

*Tascus Atwood*, for plaintiff.

Evidence: If the language in the policy is ambiguous, the conversation between plaintiff and the agent is admissible to learn the intention of the contract; and defendant is not aggrieved. 1 May Ins. § § 172, 175; *Tarr* v. *Smith*, 68 Maine, 97; *Harriman* v *Sanger*, 67 *Id.* 442; *Mussey* v. *Mussey*, 68 *Id.* 346; 47 N. Y. 597; (Jordan's testimony) *Bodine* v. *Ins. Co.* 51 N. Y. 117; *Allen* v. *Ins. Co.* 85 N. Y. 473; 1 May Ins. (3d ed.) § § 154, 154 a. Interpretation of policy: *Kratzenstein* v. *Ins. Co.* 116 N. Y. 54; *Hoffman* v. *Ins. Co.* 32 N. Y. 405.

*N. and H. B. Cleaves*, and *S. C. Perry*, for defendant.

"Merchandise" only covers property kept for sale, and excludes that kept for use. Wood Fire Ins. p. 123; *Burgess* v. *Ins. Co.* 10 Allen, 221; *Medina* v. *Ins. Co.* 120 Mass. 225; *Kent* v. *Ins. Co.* 26 Ind. 294. Evidence: *Honnick* v. *Ins. Co.* 20 Mo. 82; Wood Fire Ins. p. 126.

WALTON, J. The question is whether the term "merchandise" can, in any case, be used to describe property not intended for sale. We think it can. The word not only may be, but often is, used as the synonym of goods, wares, and commodities. It is so defined in Webster's dictionary. If used in an insurance policy to describe the goods of a merchant, it might, perhaps, be very properly limited to goods intended for sale. If used for the same purpose to describe the goods of a painter, we think it might be held to cover property intended for use and not for sale.

In *Kent* v. *Insurance Company*, 26 Ind. 294 (89 Am. Dec. 463), the court held that the meaning of the term "merchandise," when used in a contract, must depend in a great measure upon the context; that it has no fixed legal or technical signification; that when applied to the goods of a merchant, it might include such articles only as are kept for sale; but if applied to the goods of one not a merchant, it might include articles not intended for sale. "A policy of insurance, like any other contract, is to be read in the light of the circumstances that surround it; and is to be interpreted most strongly against the company whose contract it is." (19 Am. St. Rep. 596, and note.)

In the present case, the plaintiff was not a merchant. He was a house and fresco painter. He kept nothing for sale except as he first used it and then charged for it in connection with his labor. And yet the defendant company issued to him an insurance policy on his paints, oils, varnish, brushes, and "such other merchandise," in the second story of a building on Miller street in Auburn. And the evidence shows that the agent of the company first went and examined the property and then wrote the policy himself. Can there be any doubt as to the

sense in which the agent employed the phrase, "and such other merchandise?" We think not. We think he used it to describe such other articles of convenience or necessity as were used by the plaintiff in his business, and had not already been specially mentioned; and that he did not use it in the narrow and technical sense contended for in defense. Such in effect was the decision of the presiding justice before whom the case was tried in the court below without the aid of a jury, and we think his decision was correct.

Complaint is made that oral evidence was admitted to show the intention of the parties, and to explain the terms of a written instrument, where there was no ambiguity. Some of the testimony received would bear that interpretation. But we do not think it was admittted or used for such a purpose. At any rate, the exceptions do not state that it was admitted or used for such a purpose. And when a case is tried by the court without the aid of a jury, and a party wishes to take exception to the illegal introduction, or the improper use, of evidence, he must take care to have the purpose for which the evidence was admitted or used, distinctly stated in the record; for illegality must not be presumed, it must be made to appear. Most of the evidence objected to was admissible to enable the court to read the contract in the light of the surrounding circumstances, and to explain the circumstances under which the policy was issued, and to identify and locate the property insured, and there is nothing in the record to lead us to believe that any portion of it was used for an illegal purpose. We feel confident that it was not.                    *Exceptions overruled.*

PETERS, C. J., VIRGIN, EMERY, FOSTER and HASKELL, JJ., concurred.