WILLIAM K. MOTT, as Trustee in Bankruptcy of McLAUGHLIN & SABAGE, INC., Bankrupts, Plaintiff, *v.* LEE R. REEVES, Defendant.

Supreme Court, Jefferson County, July 23, 1925.

Sales — transfer of goods in bulk — action for accounting and to recover value of merchandise sold in bulk without compliance with Personal Property Law, § 44 — plaintiff, as trustee of bankrupt seller, entitled to maintain action — articles sold, consisting of electric fixtures, wires, sockets and conduits used by seller in electrical contracting business, constitute " merchandise " within meaning of statute — sale to defendant of all materials and articles used by seller in contracting business, though delivered in packages, constituted sale in bulk.

A trustee in bankruptcy may maintain an action under section 44 of the Personal Property Law to recover the value of merchandise sold in bulk where the sale is made without complying with the provisions of said statute.

A sale by a retail hardware merchant, who as a side line engaged in wiring buildings, of wire, conduits, switch boxes, fixtures, etc., to be used in connection with a .

Supreme Court, July, 1925.                        [Vol. 125

particular job of wiring, constitutes a sale of " merchandise " within the meaning of section 44 of the Personal Property Law.

A sale by said merchant of all the material and articles used in the contracting branch of its business constituted a sale in bulk, within the meaning of the statute, although the articles were delivered in the original bundles, some several hundred in number.

ACTION under section 44 of the Personal Property Law, for an accounting and to recover the value of property sold without complying with the requirements of that section.

*Arthur L. Chapman,* for the plaintiff.

*George W. Reeves,* for the defendant.

EDGCOMB, J.:

Section 44 of the Personal Property Law (as amd. by Laws of 1914, chap. 507), making void, as against the creditors of the vendor, any sale, transfer or assignment in bulk of any part, or the whole of a stock of merchandise, unless certain things are done by both seller and buyer, is in derogation of the common law, and of one's right to dispose of his property without restriction, and must, therefore, be strictly construed.

Giving to the statute the accurate interpretation required, defendant insists that the plaintiff is not entitled to recover for three reasons, viz.: (1) That the action can only be brought by one who was a creditor of the seller at the time of the sale, and that the plaintiff, who is not a creditor, but a trustee in bankruptcy representing many creditors of the seller subsequent as well as prior to the time of the sale of the articles in question, cannot maintain this action. (2) That the articles purchased do not constitute merchandise within the meaning of that word as used in the Personal Property Law. (3) That the sale was not in bulk, but rather one of a considerable number of articles in separate items.

Before discussing these various objections it is well to consider the evil which it was sought to reach by the passage of this act. The intent and purpose of the Legislature must always be kept in mind in interpreting the meaning and scope of any statute. Business is done largely on credit, and credit is extended not alone on the character and reputation of the prospective purchaser, but also on his financial ability to pay, as evidenced by the property he has, including, in the case of a merchant, his stock of goods, wares and merchandise on hand. Ordinarily such merchandise is not disposed of in its entirety to one purchaser, but is sold gradually, and replenished from time to time as the demands of the trade require. Experience has taught the business world that many a hard pressed merchant has yielded to the temptation of quietly selling to one person his entire stock of goods at one time, and,

before his creditors gain knowledge of such fact, has departed with or disposed of the purchase price, and forgotten those from whom he purchased his wares. Some years ago a demand arose to afford a remedy for the victims of such practice, and the statute in question was passed. A similar law has been enacted in many of our sister States, the details of which vary in the different commonwealths, but the general purport of which is to make a bulk sale of merchandise by a dealer outside his usual course of business presumptive evidence of fraud, unless certain required formalities have been complied with.

Defendant's three objections above stated have been so persistently asserted and reiterated, that I feel it my duty to discuss them separately and at more or less length.

The first objection, that the plaintiff cannot maintain this action, may be disposed of on the opinion of Mr. Justice RHODES in *Costello* v. *Emmick* (122 Misc. 114). A similar argument was urged in opposition to the right of a trustee in bankruptcy of a seller to recover in that case, which is on all fours with the one at bar so far as this particular question is involved. I feel constrained to follow the reasoning of and the conclusion reached by Mr. Justice RHODES in that case.

Defendant's second objection, that the articles which composed the sale in question were not merchandise within the meaning of that term as used in the statute, cannot be disposed of as quickly.

McLaughlin & Savage, Inc., the seller, was a retail merchant in the city of Watertown, N. Y., engaged in selling hardware, and certain electrical appliances, and, as a side line, wired buildings and installed lighting fixtures under contracts with the owners. For the latter purpose it kept on hand a stock of material such as is ordinarily used by contractors doing like work — fixtures, wire, conduits, switch boxes, sockets, etc. Samples of fixtures were made up and exhibited, from which orders were taken. The contract price agreed upon included not only the materials used in connection with the job, but the work of installation. Aside from the fixtures the materials used constituted substantially one-half of the cost of wiring a building, and the labor the other half.

On several occasions a small amount of this material had been retailed in the store to some customer, but ordinarily it was sold to the patron who wanted his building wired, as a part of the contract for such work.

Defendant insists that, inasmuch as the articles purchased by him were not such as were ordinarily sold over the counter to one who came into the store, but rather were used in the contracting part of the seller's business, and went into and formed a part of

33

a completed structure without the patron's seeing or handling them, they do not constitute merchandise within the strict construction which must be given to this statute.

The act itself does not define what is meant by the expression " stock of merchandise," neither does it place any limit on its meaning. There is no decision in this, or any other State having a similar statute, so far as I have been able to find, which defines with any degree of accuracy the term as used in connection with the Bulk Sales Law. Therefore, it would appear proper to accept the ordinary and usual definition of the word, having in mind the connection in which it is used, and the purpose of the statute.

" Merchandise " is a broad and general term. It is defined in Webster's New International Dictionary as follows: " The objects of commerce; whatever is usually bought or sold in trade, or market, or by merchants; wares; goods; commodities."

Bouvier's description of the expression as including all those things which merchants sell, either at wholesale, or retail, such as dry goods, hardware, groceries, drugs, etc., is adopted with approval in *Pearce, Wheless & Co.* v. *City Council of Augusta* (37 Ga. 597) and *Matter of San Gabriel Sanatorium Co.* (95 Fed. 271).

In *Groves* v. *Slaughter* (15 Pet. 449, 506) the court said: " Merchandise is a comprehensive term, and may include every article of traffic, whether foreign or domestic, which is properly embraced by a commercial regulation."

In *Kent* v. *Liverpool, etc., Ins. Co.* (26 Ind. 294) it was said: " We are not aware that the term ' merchandise,' has any fixed and technical legal signification."

In the above cases the Bulk Sales Law was not under discussion, but in the following cases, where the courts have discussed in general terms what was meant by the word " merchandise," a statute similar to the one which forms the basis of this action was under consideration.

In *Gallus* v. *Elmer* (193 Mass. 106), in attempting to define the phrase " stock of merchandise " as used in the Massachusetts Bulk Sales Law, the court says that it consists of " articles which the seller keeps for sale in the usual course of his business."

In *People's Savings Bank* v. *Van Allsburg* (165 Mich. 524) the court, in discussing the question of whether the articles sold constituted " merchandise " within the meaning of that term as used in the Michigan statute, said: " We think that ' merchandise,' as used in this act, must be construed to mean such things as are usually bought and sold in trade by merchants."

In the light of the above definitions, and giving to the word its natural and usual meaning nothing can be more plain to me

than that the articles which composed the sale complained of were merchandise, and are covered by the statute in question. They were not bought by McLaughlin & Savage, Inc., to keep or to use for its own individual purpose. They were bought and kept for sale to persons who wanted their buildings wired, and they were, before the sale to defendant, sold in the regular and usual conduct of the seller's business to any one who would buy them, and hire the seller to do the work of installing them in the building. The mere fact that they were sold only in connection with work to be done, and to the same person for whom it was to be done does not take away from the transaction the character of a sale or from the articles themselves the marks of merchandise.

The material in question is such as is usually sold and used in wiring buildings. It is not like horses, wagons, harnesses, shovels, baskets, etc., used by a coal dealer in his business, which were held not to be merchandise within the meaning of that term as used in the Michigan statute in *Bowen* v. *Quigley* (165 Mich. 337); nor is it similar to horses, wagons and harnesses used by a livery stable keeper, which were held not to be merchandise under the Washington act in *Everett Produce Co.* v. *Smith Bros.* (40 Wash. 566); nor does it resemble tools, etc., used in connection with a retail meat grocery business, which were likewise construed as not within the meaning of the Massachusetts statute in *Gallus* v. *Elmer* (193 Mass. 106).

It is true that raw material purchased to be manufactured into a finished product would not constitute merchandise within the meaning of this act. But the seller of these goods was not a manufacturer within the ordinary definition of that term. The articles in question were not raw material. They were not taken and their form changed and made into a finished product. They were put in a building in substantially the same shape they were in when they were sold to the owner. As well might it be said that nails, hinges, window fastenings and other hardware sold by a dealer, and used in the construction of a house, do not constitute merchandise, so that the merchant, who sold his stock in bulk, and out of the ordinary course of trade, without complying with the requirements of the Personal Property Law, would not violate the statute.

The conclusion already reached is strengthened rather than weakened, and set rather than disturbed by calling to mind the purpose of the statute. Can it be possible that if, before the sale, McLaughlin & Savage, Inc., had been asked to give to some creditor a statement of its merchandise, it would have failed to include the articles in question? Or would the seller have neglected to include this material in its annual inventory? Had a wholesaler, from

whom the company desired to purchase goods on credit, stepped into the store to see what merchandise the company had on hand, with a view of determining its rating, is it possible that the company would have refused to point out this material?

No; the statute cannot be given the strained construction urged by defendant.

This brings us to a discussion of whether the sale in question was in bulk.

The articles sold consisted of various kinds of material. Much of it was put up in packages, not only for convenience but for its preservation. When delivered it was given over to the defendant in the original bundles, some several hundred in number. A detailed inventory of the various articles was made. It is claimed by the defendant that this constitutes a sale of the separate items, instead of one in bulk. The buyer insists that a sale in parcels, packages or barrels does not constitute a sale in bulk, and cites as authority for such proposition *Feldstein* v. *Fusco* (205 App. Div. 806), in which it is said: "A sale in bulk is made where separating, counting, measuring, weighing or dividing in parcels, packages or barrels does not take place but where the mass and the heap are sold as one." That case was reversed by the Court of Appeals (238 N. Y. 58), but the definition of the term "in bulk" as given by Mr. Justice Hasbrouck was not questioned.

Concededly a purchaser might buy a large part of one's stock of goods by selecting a certain number of one article and a definite amount of another, and not be said to have made a bulk or mass sale.

But here the undisputed evidence is that the bargain was that defendant should purchase all the material and articles used by McLaughlin & Savage, Inc., in the contracting branch of their business. Defendant took it all, whatever it was. It was a mass sale. The listing was made not for the purpose of the sale itself, but to fix the price of the whole. The delivery was made in packages for convenience and preservation of the goods. I think it must be held that this was a sale in bulk.

In holding as I have I am not unmindful that there is no evidence that the defendant knew at the time of the sale the seller was on the verge of bankruptcy, or owed any debts whatever, or that the defendant was guilty of any actual fraud. He can be charged with only such fraud as the law infers from a failure to comply with the statute. A decision for the plaintiff will make the defendant pay double for these goods, and undoubtedly will work a hardship so far as he is concerned. We must, however, take the statute as we find it, and the court would not be justified in giving it a

strained or forced construction in order to relieve one from its consequences, especially when the situation in which he finds himself is one of his own making. Had defendant obeyed the mandate of the law he would not find himself in this embarrassing situation. Construing the act according to the plain and obvious import of its words demands a verdict for the plaintiff.

I find the value of the merchandise purchased on March 18, 1924, to be $700. Plaintiff is entitled to a judgment for that amount, with interest from the date of purchase. This will go to the creditors of the bankrupt at the time of the sale. The distribution is not a matter of consequence here. That will be properly taken care of in the bankruptcy proceedings. With this recovery there will not be sufficient to pay the creditors of the bankrupt as of March 18, 1924, in full.

Judgment for plaintiff for $700, and interest from March 18, 1924, and costs. Prepare findings.