## SORRIN v. PACIFIC FINANCE CORPORATION.

District Court, S. D. New York.

Feb. 26, 1941.

528

Max E. Sanders, of New York City (Robert P. Levis, of New York City, of counsel), for plaintiff.

Archibald Palmer, of New York City, (Samuel Masia, of New York City, on the brief), for defendant.

M. L. Heath, of New York City, for Corporation Counsel of City of New York.

GALSTON, District Judge.

The Knickerbocker Automobile Warehouse, Inc., prior to the filing of the petition in bankruptcy, was engaged in the business of buying and selling used automobiles. In the operation of its business it had frequent financial dealings with the defendant corporation. As security for the loans made by the defendant to the bankrupt company, the bankrupt executed and delivered various chattel mortgages on specifically named automobiles. During the period from July 2, 1936, to February 1, 1937, a considerable number of such transactions took place between those parties.

In the first cause of action it is alleged that those chattel mortgages were void for at the time of the execution and delivery of the respective chattel mortgages the bankrupt violated section 230-a of the Lien Law of the State of New York, Consol.Laws, c. 33, because it did not, five days before the execution of each of the chattel mortgages, make and file a detailed inventory of each article to be included in the mortgage, and because the defendant as mortgagee did not demand and did not receive from the bankrupt, as mortgagor, a written list of the names and addresses of the creditors of the bankrupt as mortgagor specifying the amounts due or owing to each; and further the defendant, as mortgagee, did not at least five days before the execution of each of the mortgages notify such creditors of the proposed mortgage and the terms and conditions thereof.

It appears that on or about February 2, 1937, the defendant instituted a replevin action against the bankrupt in the Supreme Court of the State of New York directed against the automobiles covered in the mortgages, except as to some that had been discharged prior to the issuance of the writ. The sheriff thereupon, on February 6, 1937, seized the automobiles and delivered them to the defendant. It is contended that because of such seizure within four months of the petition in bankruptcy and because of the alleged invalidity of the mortgages as aforesaid, the defendant was accorded an unlawful preference to the damage of the plaintiff in the sum of $28,858.54.

The second cause of action is one for conversion. The action is predicated on the alleged wrongful possession of the defendant arising from the replevin suit.

Section 230-a of the Lien Law in part reads as follows: "Every mortgage or conveyance intended to operate as a mortgage upon a stock of merchandise in bulk or any part thereof * * * shall be void as against the creditors of the mortgagor, unless the mortgagor shall at least five days before the execution of such mortgage make a full and detailed inventory * * *; and unless the mortgagee demand and receive from the mortgagor a written list of names and addresses of the creditors of the mortgagor specifying the amount due or owing to each * * *; and unless the mortgagee shall at least five days before the execution of such mortgage notify personally or by registered mail every creditor," etc.

It is conceded on the one hand that the mortgages mentioned in the complaint were filed within the statutory period and re-filed, and on the other hand that neither mortgagor nor mortgagee attempted to comply with the provisions of section 230-a of the Lien Law. The question is whether they should have done so. It appears that each mortgage was a separate and distinct transaction. The parties were not compelled to deal with each other following the execution of the agreement dated January 9, 1935; and as a matter of fact the defendant had similar transactions in respect to financing with at least one other person, M. I. Harris. Indeed, between the period of July 29, 1936, and February 1, 1937, the bankrupt had executed and delivered to Harris approximately 70 mortgages, all of which remained of record unsatisfied. Thus neither in terms nor substance was the mortgaging of its automobiles as and when purchased on loans from different sources "a stock of merchandise in bulk or any part thereof" as contemplated by the Lien Law. See Ben Bimberg & Co. et al. v. Unity Coat & Apron Co., Inc., 150 Misc. 836, 270 N.Y.S. 580; Feldstein v. Fusco, 205 App.Div. 806, 201 N.Y.S. 4; Id., 238 N.Y. 58, 143 N.E. 790. And as was said in Re Rosom Utilities, Inc., 2 Cir., 105 F.2d 132, 133,

"Moreover, the courts have held that section 230 a is an application to mortgages of the Bulk Sales Act appearing as section 44 of the Personal Property Law, Consol. Laws, c. 41. See In re Henningsen, 2 Cir., 297 F. 821, 823; In re Saraw, 2 Cir., 91 F. 2d 957, 958. The evil at which the section was aimed was the perpetration of a fraud on creditors by putting a bulk mortgage on a stock of goods or part of it and making off with the proceeds."

Since these chattel mortgages were properly filed, and since they were in each instance executed for a present and valuable consideration, there is no element of preference established. Moreover, the defendant went further than it was required to do because, not content with filing the chattel mortgages, it also filed a statement for trust receipts financing (pursuant to Sections 52 and 28 E of the Uniform Trust Receipts Law of the State of New York) with the Secretary of State on February 5, 1936, and a renewal thereof on January 13, 1937.

For the foregoing reasons the first cause of action must fail. But assuming that the mortgagee did not violate Section 230-a of the Lien Law, the plaintiff urges that he must succeed upon the second cause of action because neither default nor demand for payment was made before the replevin action was instituted and the seizure made by the sheriff.

Weiss, an officer of the bankrupt company, testified that no demand had been made upon him between January 31, and February 2, 1937 (i. e. prior to the date of the replevin) for payment of sums alleged to be due under the mortgages.

Weiss admitted that in December, 1936, he had had a talk with Ritter of the defendant company in which he told Ritter that the bankrupt had sold some of the cars covered by the mortgages held by the defendant, and was unable to pay the proceeds of those sales to the defendant. He requested time to liquidate the loan and assured the defendant of his ability to do so.

The examination of Weiss disclosed also that a certain Duesenberg car, which the bankrupt had purchased from one Stanton and on which it had borrowed money from the defendant, was a stolen car, or at least that Stanton had been charged in Detroit with larceny. Weiss was very evasive about a certain Lincoln coupe on which he had obtained a loan from the defendant under a pledge that the car was free and clear, but which in fact had been pledged for a loan of $400. Weiss was also evasive in respect to an alleged sale of a car on January 29, 1937, to one Michael Farrara, as well as in respect to a transaction with Michael Higgins and a conversation regarding it on February 1, 1937.

530

In explanation of the events that preceded and led to the institution of the replevin suit, Samuel Firestone, of counsel, and who had been attorney for the defendant in its dealings with the bankrupt, testified that he had a talk with Weiss on February 1st concerning cars that had been sold without the consent of the Pacific Finance Corporation on which that company held mortgages; also Firestone told Weiss that certain mortgages had been delivered to the Finance Corporation covering automobiles to which the bankrupt had no title, in fact that some of the automobiles never existed, and that some covered stolen automobiles. Firestone said he accordingly notified Weiss that the defendant would have no further dealings with him and that the Finance Corporation desired the mortgaged cars or payment of the monies advanced. Firestone quoted Weiss as saying: "He said he was not going to deliver them to us but if we wanted to get them we would have to get a sheriff."

■ Thereupon the replevin action was instituted. Although generally speaking, for counsel to act as a witness in behalf of his client is a practice not to be approved, yet in this case I accept Firestone's statements over Weiss's denials. Weiss as a witness was not persuasive, oftentimes evasive. At one time in answer to a question by the court as to whether he directly or indirectly, after the consummation of the deal between the Lenobel and Pacific companies received anything as a result, said he did not and that the Lenobel company kept all the money. Thereafter he admitted that he had received from the Lenobel company half the proceeds arising out of the re-sale of the automobiles amounting to $5,-000.

Among the exhibits in evidence are a chattel mortgage dated January 7, 1937, and one dated January 14, 1937, each of which contains in Clause 4 thereof the same provision and reading in part as follows:

"The mortgagor specifically agrees not to use this property for personal use or for any purpose whatsoever, nor to remove said property or any part thereof from the premises mentioned herein without the written consent of the mortgagee. In the event the mortgagor shall remove property before having paid for same, or if the mortgagee shall at any time, even before payment becomes due, believe that its interest is not amply protected by leaving said property at the premises stored, or if the mortgagee, in its opinion, shall deem the security unsafe or shall deem the security impaired or at any risk, and the mortgagee's opinion or judgment shall not be questioned or attacked, and any defense based upon wrongful exercise of such judgment is hereby waived and the mortgagee released therefrom; or in the event default shall be made in the payment of the said sum above mentioned on any part thereof, or of any renewal or extension thereof, or should the mortgagor default in the payment of any other monies owing the mortgagee, whether under this or any other agreement, mortgage, repurchase agreement, conditional sales agreement, promissory note, or otherwise or should the mortgagor default in any manner whatsoever under any other agreement with the mortgagee, or should the property become subject to any levy by an officer or public official, or should the mortgagor become insolvent, or a petition in bankruptcy be filed by or against the mortgagor, or should a judgment be rendered against the mortgagor or should said mortgagor sell, convey, assign sublet, hire out or encumber the said property in any manner whatsoever, or in the event the mortgagor shall default in any promise, covenant, agreement or condition herein agreed by him to be performed. Should the mortgagor make any misrepresentations in respect to the cost, value, description, condition, title or encumbrances upon the property or the financial condition of the mortgagor or of any other facts herein or in any other paper set forth and executed by the mortgagor. Then, and in that event, all of the indebtedness then owing by the mortgagor shall become immediately due and payable and it shall and may be lawful for, and I (we) the said mortgagor, do hereby agree to deliver said property upon demand of and only to the holder of this instrument in as good condition or better than they were on the date of the execution of these presents, and do hereby authorize and empower the said mortgagee with the aid and assistance of any person or persons, to enter any premises where said property or any part thereof, may be, and take and carry the same away, without notice or demand and without legal process, hereby waiving any action for trespass or damage."

■ There is no dispute that the other chattel mortgages executed by the parties and delivered to the defendant contained the foregoing provision. In consequence it

was within the power of the mortgagee in respect to any breach by the mortgagor of any of the foregoing conditions, to declare a default as to all existing mortgages. The testimony of Firestone and the admissions made by Weiss establish breaches of the chattel mortgages. I accept Firestone's testimony also as to the demand. In consequence the conditions precedent to the institution of the replevin suit justified the defendant in seeking to obtain possession of the cars by virtue of a writ of replevin. It is significant that the bankrupt took no action to vacate the writ.

The subsequent proceedings which involved the defendant and the Lenobel company, in view of the foregoing holdings, are of no materiality; but if a finding is desired it appears to me that it was the bankrupt who sold the seized cars to the Lenobel company and that the proceeds of $16,000 were received by the defendant in settlement of the replevin suit.

The defendant may have a judgment dismissing the complaint.