## In re ARROW HOME APPLIANCES, Inc.
### No. 49782.

United States District Court
E. D. New York.

Oct. 14, 1952.

Max Schwartz, New York City, for trustee.

Conklin & Bentley, New York City, for Lawrence-Cedarhurst Bank. Edward S.

Bentley, Robert T. Aller, New York City, of Counsel.

GALSTON, District Judge.

The Lawrence-Cedarhurst Bank seeks a review of the order of the Referee in which he held a chattel mortgage, executed by the bankrupt to the bank, as mortgagee, was void, and that the payment received by the bank under the mortgage of November 30, 1951 was preferential.

The petition recites that the bank is a creditor and owner and holder of a promissory demand note, bearing date of October 29, 1951, in the sum of $6,000, made by the bankrupt and secured by a chattel mortgage dated October 29, 1951. It appears that on or about December 12, 1951, and prior to the appointment of the trustee in bankruptcy, the receiver applied to the referee for an order authorizing the sale of the chattels covered by the mortgage free and clear of the lien, the proceeds to be held in a separate fund to await further order of the court. The bank filed a counterpetition for an order directing the receiver to deliver to the bank the articles described in the chattel mortgage, to enable the bank to sell such merchandise as provided in the chattel mortgage, and to apply the proceeds to the indebtedness of the bankrupt to the bank. The receiver filed an answer seeking denial of the bank's motion, and an order adjudging the chattel mortgage null and void.

Thereafter a stipulation was entered into by the receiver and the bank permitting the sale of the mortgaged articles, free and clear of the lien, reserving for determination the validity of the chattel mortgage. The trustee in bankruptcy, appointed thereafter, continued the proceedings which had been instituted by the receiver.

The matter came on for hearing before the Referee, on the conclusion of which the Referee held the mortgage to be null and void as against the trustee in bankruptcy, and further adjudged that the sum of $230 received by the bank on November 30, 1951 was preferential in violation of Sections 60 and 70 of the Bankruptcy Act, 11 U.S.C.A. §§ 96, 110, and Section 15 of the Stock Corporation Law of the State of New York, McKinney's Consol.Laws, c. 59.

The bank contends that the order is erroneous on the ground that the Referee's conclusion of law was based on the single ground that the chattel mortgage was void under Section 230-a of the Lien Law of the State of New York, McKinney's Consol. Laws, c. 33, and that in so holding, the Referee misconstrued that section and gave no weight to the fact that the chattel mortgage was not a mortgage upon a stock of merchandise in bulk, or any part thereof, but specifically enumerated each and every article covered by the mortgage. The bank's petition also contends that the order is erroneous in adjudging that the $230 received by the bank on November 30, 1951 was a preferential payment.

The pivotal issue, therefore, concerns Section 230-a of the Lien Law of the State of New York. That section of the Act provides:

"Every mortgage or conveyance intended to operate as a mortgage upon a stock of merchandise in bulk or any part thereof, or upon merchandise and fixtures pertaining to the conduct of the business of the mortgagor, shall be void as against the creditors of the mortgagor, unless the mortgagor shall at least five days before the execution of such mortgage make a full and detailed inventory, showing the quantity and, so far as possible with the exercise of reasonable diligence, the cost price to the mortgagor of each article to be included in the mortgage; and unless the mortgagee demand and receive from the mortgagor a written list of names and addresses of the creditors of the mortgagor specifying the amount due or owing to each and certified by the mortgagor under oath to be a full, accurate and complete list of his creditors and of his indebtedness; and unless the mortgagee shall at least five days before the execution of such mortgage notify personally or by registered mail every creditor whose name and address is stated in such list, or of which he has knowledge, of the proposed mortgage and the terms and con-

ditions thereof. Added L.1921, c. 462; amended L.1922, c. 137, eff. March 22, 1922."

Concededly if the chattel mortgage fell within the framework of Section 230-a, the provisions therein recited have to be complied with to effect validity. It is conceded that the mortgagor did not, five days before the execution of the chattel mortgage on October 29, 1951, make a full inventory of the cost price to the mortgagor of each article included in the mortgage. It likewise appears that the mortgagee did not demand nor receive from the mortgagor a written list of names and addresses of the creditors, specifying the amount due or owing to each, nor did the mortgagee, before the execution of the mortgage, notify such creditors of the proposed mortgage and its terms and conditions.

The bank argues that neither the Lien Law nor even the Personal Property Law, McKinney's Consol.Laws, c. 41, Section 44, defines what was meant by "sale, transfer or assignment in bulk *of any part* or the whole of a stock of merchandise", or "a mortgage upon a stock of merchandise in bulk *or any part thereof*". The purposes of the enactments have been construed by the courts and held in effect, as was stated by Judge Moscowitz in In re Rosom Utilities, Inc., D.C. 25 F.Supp. 626, 627:

"What the Legislature, undoubtedly, had in mind was to protect creditors against fraud and to prevent the mortgaging and disposition of the property of a debtor without appropriate notice to the creditors. This notice would enable the creditors of a debtor, in the event of fraud, to apply to the Court for relief. Certainly, in a case of this character where a mortgagor buys a few radios and refrigerators and executes a purchase money mortgage thereon, it was not the intention of the Legislature of the State of New York to place an undue burden upon the mortgagee to notify all the creditors of the mortgagor. If such were the intention of the Legislature it could have said so in clear language."

In the same case the Circuit Court of Appeals 2 Cir., 105 F.2d 132, 134 said:

"The evil at which the section was aimed was the perpetration of a fraud on creditors by putting a bulk mortgage on a stock of goods or part of it and making off with the proceeds."

In construing Section 44 of the Personal Property Law, Judge Hasbrouck, in Feldstein v. Fusco, 205 App.Div. 806, 201 N.Y.S. 4, 6, Reversed on other grounds, 238 N.Y. 58, 143 N.E. 790, said:

"A sale in bulk is made where separating, counting, measuring, weighing, or dividing in parcels, packages, or barrels does not take place, but where the mass and the heap are sold as one."

Reference to the chattel mortgage in this case shows a listing of thirty-four separate articles of which thirty-three were different kinds, and the only articles where there was more than one of the same kind were the Sylvania Television sets. The purpose for including these items in the chattel mortgage was, as the witnesses testified, to create a total value of about $7,500, as collateral to the loan of $6,000. Some of the articles were in the Cedarhurst store, and others in the Valley Stream store.

It is the contention of the trustee that the section of the Lien Law covers not only "bulk" assignments of merchandise, but also transactions in which a substantial part of the entire merchandise inventory of the mortgagor is placed under the lien of the mortgage.

"Substantial" is, of course, a relative term and depends upon the facts of each case. There was realized on merchandise covered by the bank's mortgage, at the auctioneer's sale, the sum of $4,026.90, almost fifty per cent of the total sum realized on the entire merchandise inventory. If it were, so the bank contends, but thirty per cent at the time the total mortgage was executed, such percentage would seem to be substantial.

The Referee has cited no authority in support of his conclusion that an assignment of a substantial amount of merchandise is contemplated by Section 230-a of the Lien Law.

■ I think it is clear that there was no sale in bulk as contemplated by the statute. Certainly not if "bulk" means the whole of the merchandise, i. e. all of it. On the other hand, the statute does apply to "any part" of the merchandise. Carried to its logical ad absurdum, any part, fractionally, might be one item, but so to construe it would not fall within the manifest object of the Act, which is to prevent the perpetration of a fraud on creditors, In re Rosom Utilities, Inc., supra. See also In re Weinstein, D.C. 40 F.Supp. 798. Separate mortgages on specifically named automobiles, executed to secure loans to the automobile dealer, would not constitute mortgages on a "stock of merchandise in bulk" within this section. Sorrin v. Pacific Finance Corporation, D.C., 37 F.Supp. 527, 529. In that case it appeared that the bankrupt had been engaged in the business of buying and selling used automobiles, and had frequent financial dealings with the defendant. As security for the loans made by the defendant, the bankrupt executed and delivered various chattel mortgages on specifically named automobiles. Although it does not appear from the opinion how many automobiles were so mortgaged, nor what part of the stock of the bankrupt the separate mortgages when aggregated amounted to, it was held that the transactions did not fall within Section 230–a of the Lien Law.

Closer to the facts of the instant case is Jubas v. Sampsell, 9 Cir., 185 F.2d 333, 334. There the court said, in construing the provisions of the California statute relating to bulk sales:

"The Findings of Fact to the effect that the shoes in suit were in the stock in trade and constituted 25% in quantity and 15% in value of the whole stock supports the conclusion that the part sold was a substantial part of the whole."

See also Markwell & Co. v. Lynch, 114 F. 2d 373, also a Ninth Circuit decision, which holds that a pledge of merchandise of $600 for a loan of $300, when the entire merchandise inventory did not exceed $9,000, was a substantial part of the bankrupt's stock in trade, and that the transfer was not made in the ordinary course of business.

We have not much help from New York State court decisions. There is, however, a recent case decided by the Appellate Division, Fourth Department, Sternberg v. Rubenstein, 279 App.Div. 30, 108 N.Y.S.2d 218, which throws some light on the subject. The bankrupt was in the retail shoe business. The court held that the sale of 1294 pairs of shoes, which represented one-sixth of the stock on hand, constituted a sale in bulk. It is true that the court was considering Section 44 of the Personal Property Law, but as Judge Swan observed in In re Saraw 2 Cir., 91 F.2d 957, 958, "Section 230–a is an application to mortgages of the Bulk Sales Act (section 44, N.Y. Personal Property Law). See In re Henningsen, 2 Cir., 297 F. 821. Hence, cases construing one statute are apposite to the other."

Thus there is authority for holding that Section 230–a of the Lien Law covers a transaction in which a substantial part of the merchandise would fall within the framework of the statute. The referee has reviewed the course of dealings between the bankrupt and the bank; and a reading of the record confirms his recital. The bankrupt first obtained credit from the bank of a loan of $6,000, in January, 1950, and gave a chattel mortgage as collateral; the transactions were repeated every two months, and apparently the bank was never notified as each new chattel mortgage was given and a new note obtained that the articles listed in the old mortgage had been disposed of by the bankrupt. As to these prior transactions, so far as the record discloses, there was no indication of insolvency on the part of the bankrupt. Though there is no specific finding to this effect, the articles thus mortgaged probably did not constitute so great a percentage of the total merchandise as was reflected in the transaction of October 29, 1951. But such transactions if valid would certainly not relieve the bank from complying with the requirements of Section 230–a if, as has been indicated, on October 29, 1951 the articles listed amounted to a substantial part of the total merchandise.

■ It is one of the contentions of the bank that specifying the articles, as was

done in the chattel mortgage, kept the transaction from falling within Section 230–a. But there is nothing in the statute, nor in its judicial interpretation, which warrants this conclusion. See Sternberg v. Rubenstein, supra.

The result is unfortunate, but undoubtedly arose from the failure of the bankrupt to advise the bank of its imperilled financial position.

The order of the referee must, therefore, be affirmed. Settle order on notice.