## DAVIS v. LAWRENCE-CEDAR-HURST BANK.

No. 207, Docket 22610.

United States Court of Appeals Second Circuit.

Argued April 9, 1953.

Decided May 20, 1953.

Conklin & Bentley, New York City (Edward S. Bentley and Robert T. Aller, New York City, of counsel), for appellant.

Max Schwartz, Brooklyn, N. Y., for appellee.

Before SWAN, Chief Judge, and CHASE and CLARK, Circuit Judges.

SWAN, Chief Judge.

The decision of the district court, In re Arrow Home Appliances, 107 F.Supp. 914, held void as against the mortgagor's trustee in bankruptcy a chattel mortgage executed by the bankrupt on October 29, 1951.[1] The district court left undisturbed the referee's finding that a payment of $230 received by the bank on November 30, 1951 from the sale of one of the mortgaged articles was void as a preference. The mortgage was invalidated for failure to comply with section 230–a of the New York Lien Law, McK.Consol.Laws, c. 38, with respect to notice to creditors.[2] The appellant contends that compliance was not required because the mortgage was not "upon a stock of merchandise in bulk or any part thereof".

The facts regarding the mortgage are not is dispute. The mortgagor was a retail dealer in home appliances such as washing machines, dryers, refrigerators and television sets. It conducted business at two stores, one in Cedarhurst, the other in Valley Stream. The mortgage secured the mortgagor's demand note for $6,000 and covered 34 specifically described articles, some of which were located in one store and some in the other. The mortgaged articles constituted nearly one-half in quantity and in value of the entire stock of merchandise in both stores.[3] The mortgage was the last of a series of mortgages, each of which took the place of the preceding one. In every case the prior note for $6,000 was charged against the mortgagor's checking account in the bank, and the new note, $6,000 less discount, was credited to the same account. Both the referee and the district court exonerated the bank of any lack of good faith in accepting the mortgage of October 29, 1951. On that date the bank did not know and had no reason to know that the mortgagor was in financial difficulties.

Quoting this court's statement in In re Rosom Utilities, 2 Cir., 105 F.2d 132, 134 that "The evil at which the section was aimed was the perpetration of a fraud on creditors by putting a bulk mortgage on a stock of goods or part of it and making off with the proceeds", the appellant argues that the transaction now under review does not fall within the purpose of the statute and should not be condemned, because renewal of the loan did not give the mortgagor any cash or property with which it could "make off"; it merely relieved the mortgagor of the necessity of paying the prior $6,000 note, and thereby left its checking account unimpaired ex-

---

1. The petition in bankruptcy was filed December 6, 1951.

2. Lien Law § 230–a. "Chattel mortgages on stocks of merchandise
   "Every mortgage or conveyance intended to operate as a mortgage upon a stock of merchandise in bulk or any part thereof, or upon merchandise and fixtures pertaining to the conduct of the business of the mortgagor, shall be void as against the creditors of the mortgagor, unless the mortgagor shall at least five days before the execution of such mortgage make a full and detailed inventory, showing the quantity and, so far as possible with the exercise of reasonable diligence, the cost price to the mortgagor of each article to be included in the mortgage; and unless the mortgagee demand and receive from the mortgagor a written list of names and addresses of the creditors of the mortgagor specifying the amount due or owing to each and certified by the mortgagor under oath to be a full, accurate and complete list of his creditors and of his indebtedness; and unless the mortgagee shall at least five days before the execution of such mortgage notify personally or by registered mail every creditor whose name and address is stated in such list, or of which he has knowledge, of the proposed mortgage and the terms and conditions thereof."

3. This statement is based as to quantity on the testimony of Mr. Sternin, vice-president of the bank. As to value it is based on the amount realized at the auction sale, plus the item of $829.47 representing three mortgaged appliances sold by the mortgagor before the bankruptcy.

cept for the deduction from the new note of a thirty day discount. But the statute does not declare a bulk mortgage void only if a fraud has in fact been perpetrated on creditors. It strikes down the mortgage, regardless of the good faith of the parties, unless the required notices have been given to creditors. As Professor Williston says in discussing Sales in Bulk, "The details of these statutes vary, * * * but [their] general purport * * * is that a sale by a dealer of his merchandise in bulk is * * * presumed to be fraudulent in the absence of certain formalities."[4] Hence it is immaterial that no actual fraud on creditors was intended or effected.

We therefore turn to the vital problem whether the mortgage under attack was on "a stock of merchandise in bulk or any part thereof". The appellant relies on definitions which declare that "bulk" refers only to merchandise which is neither counted, weighed nor measured.[5] It argues that its mortgage falls outside such definition because the mortgaged articles were separated, counted and identified by the trade name of the article or the name of the manufacturer, the model number and the serial number where required. If such listing could avoid the impact of the Bulk Mortgage Act or the Bulk Sales Act, it would easily be possible for a retail dealer to dispose of his entire stock of merchandise without the giving of the notices which the statutes require for the protection of creditors. Sternberg v. Rubenstein, 279 App.Div. 30, 108 N.Y.S.2d 218, expressly disapproved the definition of "in bulk" in Feldstein v. Fusco (note 5 supra), as too narrow to be applied generally.[6] We believe the Sternberg case represents the correct interpretation of the statute and think it decisive of the case at bar. When the mortgage covers a substantial part, in quantity and value, of the mortgagor's stock of merchandise, we cannot doubt that it is a mortgage "in bulk." To hold otherwise would create a significant loophole in the operation of the Act. Devices other than chattel mortgages, such as purchase money mortgages, conditional sales and trust receipts, are adequate to the business need without the risk, inherent in the kind of transaction here involved, of defrauding creditors.

Invalidation of the mortgage also compels affirmance of the order holding the $230 payment a voidable preference, since there has been shown no reason to upset the finding that the Bank knew of the bankrupt's financial difficulties when it accepted this payment.

Order affirmed.

---

4. Williston Sales, Rev.Ed., Vol. 3, par. 643. The appellant concedes that cases construing the Bulk Sales Act (N. Y. Personal Property Law, § 44) are apposite to the Bulk Mortgage Act. See In re Saraw, 2 Cir., 91 F.2d 957.

5. See "Bulk" in Black's Law Dictionary and 1 Bouvier's Law Dictionary, Rawle's Third Revision, 403; Feldstein v. Fusco, 205 App.Div. 806, 809, 201 N.Y.S. 4, reversed on another ground, 238 N.Y. 58,

143 N.E. 790. Cf. Mott v. Reeves, 125 Misc. 511, 516, 211 N.Y.S. 375, affirmed 217 App.Div. 718, 215 N.Y.S. 889, affirmed 246 N.Y. 567, 159 N.E. 654. As to mortgages by dealers in automobiles, cf. Lien Law, § 230-c. .

6. See also Jubas v. Sampsell, 9 Cir., 185 F.2d 333; Irving Trust Co. v. Rosenwasser, D.C.N.Y., 5 F.Supp. 1016; In re Weinstein, D.C.N.Y., 40 F.Supp. 798.