Henry Epstein, J,
This is an action of the trustee in bankruptcy of the business of James Zias under the name of Broadway Fur Shop against said Zias doing business as Broadway Fur Shop and William Bauman, defendants, Zias, the bankrupt, was the chief witness for plaintiff trustee and was not served as a defendant. The real defendant was William Bauman. Liability is sought to be fixed on defendant Bauman as a co-conspirator and instigator of a conspiracy with Zias to defraud creditors of Zias and additionally as the purchaser of fur merchandise in violation of the Bulk Sales Law. Study of the provisions of sections 273, 274 and 276 of the Debtor and Creditor Law and section 44 of the Personal Property Law, and of cases thereunder fails to sustain plaintiff’s charges. Zias conducted a retail fur shop in Astoria, Queens, under the name of Broadway Fur Shop for some years prior to the filing of an involuntary petition in bankruptcy against him on July 10, 1957. Defendant Bauman had business dealings with Zias both in selling to Zias and on occasion purchasing from Zias, The instant action is based on a series of sales of fur merchandise to Bauman by Zias over a period from January, 1956 to June, 1957, a total of some 19 specific transactions, ranging from $500 to $3,750. Each transaction is evidenced by a bill of sale and a check which tallies with the invoice.
Plaintiff claims that the said transactions were sales in bulk, were pursuant to a conspiracy to defraud creditors, and were without fair consideration. Aside from the trustee plaintiff, the only witnesses for plaintiff were Zias, the bankrupt, and a youthful former employee, Tommy Nestoras, The trustee plaintiff’s testimony and the evidence offered by him reveals no personal knowledge of either the bankrupt’s inventory or his fiscal status prior to the bankruptcy petition July 10, 1957 and the adjudication as a bankrupt August 1,1957. The books of Zias, the bankrupt, were only kept in form to April, 1957 and were incomplete to June, 1957. Deficits in Zias’ bank balances and renewed loans to make good prior deficits were a continuous form of his struggle to survive going back to early 1956, long before the danger period of bankruptcy, Zias did not receive a discharge in bankruptcy, plaintiff having opposed it.
The purchases of new fur merchandise from Zias by Bauman extended over a period of some IS months prior to the bankruptcy petition. Each transaction is evidenced by regular invoices with checks in the specific amount of such invoices. In *732 one case the details, otherwise furnished by invoices, are found on the reverse of the check. Bauman testified that he made the purchases on the dates specified and helped Zias by making such purchases when Zias was sorely in need of funds. Zias says that the invoices were inaccurate; that they did not set forth the entire amount of furs sold on each occasion; that other furs were delivered on each such occasion without being invoiced; that cash was paid by Bauman and not noted in the books or on the invoice. Bauman categorically denies these statements by Zias, the bankrupt. The records of the bank, in which Zias claims both the checks and cash were deposited each time, do not support the bankrupt’s testimony. Testimony of Zias in the bankruptcy proceedings contradict his testimony before this court and vice versa. The testimony of Zias’ former employee Nestoras is hardly credible. He claims to have been present and seen Bauman give cash sums to Zias and to have been entrusted with the substantial cash sums to deposit in Zias’ bank account and to pay creditors. None of the proof bears out this testimony and this court cannot give any weight to the testimony of either Zias or Nestoras. Both are replete with failure to have knowledge of details, to be able to explain missing receipts, bills, notes, bank records or cost statements. Zias says that Bauman’s offer was the best he could obtain at the time; his advertising of furs for sale at greatly reduced prices was unavailing; he never sought to deal with others than Bauman.
The bankrupt Zias was wholly unable to identify the invoiced merchandise sold to Bauman with the invoices from Zias’ suppliers and creditors. If anything his testimony and the evidence here would prove that the Bauman transactions complained of actually helped to furnish at least some funds used to pay creditors in the struggle of Zias for business survival. The testimony and proof fail utterly to establish a bulle sale or bulk sales within the scope of section 44 of the Personal Property Law. Sales as “job lots” do not establish a violation of the Bulk Sales Law (Sternberg v. Rubenstein, 305 N. Y. 235, 240 [Fuld, J.]; Wright v. Hart, 182 N. Y. 330, 356). Plaintiff trustee has also failed completely to prove any fraud or damage due to the alleged transactions. Zias was at a loss to account for his charges of fraudulent sales to Bauman. He obtained from Bauman the best price he could get, because he could not sell to anyone at a better price. This is Ms own admission. He was unable: to establish the cost of the specific merchandise sold to defendant' Bauman; to prove the description or condition of the furs sold to defendant; the condition
*733 of the market, or why he did not have the records or bills to enable bim to make such proof. The trustee plaintiff cannot be placed in a better position than the bankrupt or his creditors. This court cannot indulge in fantasy to help the trustee. Damages must flow from some act of defendant which must be established by competent proof. No such proof is here, much less any preponderance of credible evidence of wrongdoing by Bauman (Wakeman v. Wheeler & Wilson Mfg. Co., 101 N. Y. 205). The proof called for by Mott v. Reeves (125 Misc. 511, affd. 217 App. Div. 718, affd. 246 N. Y. 567) and Sapphire Corp. v. American Mercury Mag. (3 Misc 2d 586) cited by plaintiff, is wholly lacking here.
Motion to dismiss complaint granted. Judgment for defendant Bauman. Findings and conclusions having been waived, the foregoing constitutes the decision in this case.