JOHN GALLUS vs. IRVING H. ELMER.

Hampden.      September 25, 1906. — October 17, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, & BRALEY, JJ.

*Sales of Merchandise in Bulk.   Sale.   Words, "Sale."*

A transfer by a dealer of the whole of his stock of merchandise outside his usual course of business in satisfaction of a pre-existing debt is a sale in bulk within. the meaning of St. 1903, c. 415, making such a sale void as against creditors of the seller unless the requirements of that statute are complied with.

A sale of fixtures and tools is not a sale of a stock of merchandise within the meaning of St. 1903, c. 415, regulating sales of merchandise in bulk.

REPLEVIN against a deputy sheriff for personal property attached by the defendant as the property of one Kopec. Writ in the Police Court of Chicopee dated June 12, 1905.

On appeal to the Superior Court the case was submitted upon an agreed statement of facts to *Hitchcock*, J., who found for the defendant. The plaintiff alleged exceptions.

The following facts were agreed with the stipulation that the court should have power to draw inferences from the facts stated:

The articles replevied were fixtures, tools and utensils and goods used in carrying on the butcher and grocery business at No. 67 Exchange Street in Chicopee. Their value was $75.

On May 9, 1905, the plaintiff was conducting a butcher and grocery business at No. 67 Exchange Street, and on May 9 sold the articles mentioned in the writ of replevin, together with the stock of merchandise in the store, and executed and delivered a bill of sale therefor to one Karol Kopec, also of Chicopee, for the sum of $550, of which $100 was paid in cash and the bal-

ance was to be paid on June 9, 1905, the promise so to pay being oral. Kopec took possession on the ninth day of May, and proceeded to carry on the business. During the time he was so carrying on the business he sold nearly the whole of the stock of merchandise which he had bought of the plaintiff, and purchased certain other merchandise from the H. L. Handy Company of Springfield and others for use in the business, which actually was used therein. On June 9 the plaintiff went to Kopec at the store and demanded payment of the amount due him, and Kopec said that he did not have the money. The plaintiff then said that he would get a sheriff and attach the property in the store, to which Kopec replied that he need not do that for he, Kopec, was willing that the plaintiff should take all of the property in payment of the debt due. The plaintiff replied that he was willing to take the property in that way, and both parties then went to an attorney at law who, on being told the above facts and that they wanted a paper to show that the plaintiff was the owner of the property, drew upon the back of the bill of sale mentioned above a transfer and reconveyance of the property, which was signed and delivered by Kopec to the plaintiff, who immediately took possession of the property in payment of the debt. No consideration passed from the plaintiff to Kopec except that the debt was regarded as extinguished by the transfer of the property. The value of the property at this time did not exceed the amount of the debt, and there was no intent to defraud creditors on the part of either the plaintiff or Kopec.

No inventory, such as is required by St. 1903, c. 415, ever was made, no list of creditors was demanded or furnished, nor were the creditors of Kopec ever notified.

On June 12 the defendant took possession of the articles mentioned in the writ by virtue of a valid writ of attachment in favor of the H. L. Handy Company against Kopec, under a valid claim for merchandise delivered to and actually used by Kopec between the days of June 5 and June 9 inclusive. Thereupon the plaintiff brought this action of replevin. Kopec's name was on the store window at the time of the attachment.

The bill of sale of May 9, 1905, from the plaintiff to Kopec began as follows:

" Know all men by these presents, that I, John Gallus of Chicopee, Mass., in consideration of Five Hundred and Fifty Dollars paid by Karol Kopec of said Chicopee, the receipt whereof is hereby acknowledged, do hereby grant, sell, transfer and deliver unto the said Karol Kopec the following goods and chattels, namely, all of my stock of meats, provisions, produce now in my store at No. 67 Exchange street, Chicopee, Mass., and all of my book accts. one ice box, 1 Show case, 1 meat table, three knives, 1 Platform scales, 1 small scales, 1 steel and all the other personal property in said store used in the business, together with the good will of the same."

The reconveyance written on the back of this instrument, executed under seal by Kopec and signed also by a witness, was as follows:

" Chicopee, Mass., June 9th, 1905.

" In consideration of four hundred dollars to me paid this day by John Gallus of Chicopee, Mass., I hereby sell, transfer and deliver all of the within described personal property back to said John Gallus to have and to hold to him and his heirs and assigns forever and I hereby warrant the title to said property and that the same is free from all encumbrances."

*E. A. McClintock & J. P. Kirby*, for the plaintiff.

*J. H. Loomis*, for the defendant.

HAMMOND, J.    St. 1903, c. 415, provides that "the sale in bulk of any part or the whole of a stock of merchandise, otherwise than in the ordinary course of trade and in the regular and usual prosecution of the seller's business, shall be fraudulent and void as against the creditors of the seller" unless certain things are done by the seller and purchaser; and the question is whether the transaction which took place between the plaintiff and Kopec on June 9, 1905, was within the statute.    The requisites of the statute were not complied with by either the seller or the purchaser, and the transaction was clearly otherwise than in the ordinary course of the seller's business.

The plaintiff however stoutly insists that the transaction in substance was not a sale, but simply the discharge by way of accord and satisfaction of a pre-existing debt due to him from Kopec. There can be no doubt that there was a discharge of the pre-

existing debt by way of accord and satisfaction; and if, after the transaction, the plaintiff had sued Kopec, the accord and satisfaction would have been a complete defence.

But the transaction had another phase, so far at least as respected Kopec's other creditors. There was a change in the ownership of the property, which, if valid as against them, freed from liability property which theretofore could have been attached by them; and thus their security was impaired. While it is true that in its strictest sense a sale is a transfer of personal property in consideration of money paid or to be paid, still in the interpretation of statutes it is often held to include barter and any transfer of personal property for a valuable consideration. "In a general and popular sense, the sale of an article signifies the transfer of property from one person to another for a consideration of value, without reference to the particular mode in which the consideration is paid." Bigelow, C. J., in *Howard* v. *Harris*, 8 Allen, 297, 299. And accordingly it was held in that case that where the consideration for the transfer of the ownership of a horse consisted of intoxicating liquors which the buyer of the horse was not legally authorized to sell, the transaction was a sale within the meaning of a statute prohibiting the sale of intoxicating liquors.

We are of opinion that the statute in question was intended to prevent a trader from disposing of his stock of merchandise in a manner outside his usual course of business, so that the same should be taken away from his creditors in general, and that the transfer under the circumstances disclosed in this case was a sale although made to a creditor.

The plaintiff still further insists that the statute does not apply to the fixtures, and this view seems correct. The phrase "stock of merchandise," as used in the statute, properly and naturally describes articles which the seller keeps for sale in the usual course of his business. It does not naturally describe fixtures. It would hardly be within the usual course of business for a storekeeper at any time to sell his fixtures, and it is not to be presumed that the Legislature intended to prohibit the sale of a fixture, unless such intent is clearly expressed. The natural reading of the statute makes it applicable, as has been said, only to the articles which in the ordinary course of his

business the seller keeps for sale, and that must be taken to be its legal meaning. See *Albrecht* v. *Cudihee*, 37 Wash. 206. It follows that the plaintiff may recover the fixtures replevied, but cannot hold the meats and provisions. Upon inspection of the record it appears that certain of the articles were fixtures and tools. For this reason the order must be

*Exceptions sustained.*