## IRVING TRUST CO. v. ROSENWASSER.
## In re LEIBOWITZ BROS., Inc.

District Court, S. D. New York.
Feb. 14, 1934.

Krause, Hirsch & Levin, of New York City (Sydney Krause and Morris M. Marcus, both of New York City, of counsel), for plaintiff.

Max Berkow, of New York City, for defendant.

WOOLSEY, District Judge.

My judgment in this case is that the plaintiff must have a decree, but without costs.

The decree shall provide that the defendant became a trustee of the shoes transferred to him on March 1, 1933, and that he should return them to the plaintiff, or, failing that, that the plaintiff should have an accounting for the profits, if any, which the defendant may have made by the resale of the goods thus declared to be a trust res.

I. In the first place, I want to preface my short remarks on the subject of this case by saying that the defendant, Mr. Rosenwasser, in my opinion, has not been guilty of any fraud or connivance of any kind with anything which the bankrupt did. I find that he was absolutely guiltless of any intent to do anything wrong. I find that he did not know the officers of the bankrupt, Leibowitz Bros., Inc., and that what he did in making the purchase on March 1, 1933, of the so-called "close-outs" or odds and ends of women's shoes, in the neighborhood of 5,000 pairs, was done without any intention whatever of participating in any fraud of any nature or kind on the creditors of the bankrupt.

I emphasize this because I want it clearly to appear not only for Mr. Rosenwasser's own sake that he was not concerned in anything of that kind, but also in order that, if this case goes to the Court of Appeals, it may be clearly understood that I am basing my decision solely on what I conceive to be the law covering the transfer of goods in bulk, as fixed by the Legislature of New York state in section 44 of the Personal Property Law (Consol. Laws, c. 41).

II. In the course of the argument it has been asserted, and I think rightly, that, in order to make out its case here, the plaintiff had first to establish three elements: (1) That the sale made was a bulk sale within the meaning of section 44 of the New York Personal Property Law; (2) that there had not been a compliance by the defendant with the provisions of that act; and, (3) that there were creditors of the seller at the time when the sale was made who were still creditors at the time of the bankruptcy.

The sale was made on March 1, 1933. The fact that section 44 of the New York Personal Property Law was not complied with is common ground. Indeed, it seems to me to be admitted, in effect, in the answer.

The fact that there were creditors, both at the time of the sale on March 1, 1933, and at the time of the bankruptcy, is shown beyond a peradventure. I will not go into the details of the figures, but there were a number of creditors, several of whom had claims far exceeding the amount involved in this sale.

III. There remains, therefore, to be discussed the question which has somewhat puzzled me from the first, namely, whether the sale of these "close-outs" could be regarded properly as within the meaning of section 44 of the New York Personal Property Act. The wording of that act as at present in force and as in force on March 1, 1933, when this sale occurred, is: "The sale * * * in bulk of any part or the whole of a stock of merchandise * * * otherwise than in the ordinary course of trade and in the regular prosecution of said business, shall be void as against the creditors of the seller, * * * *" unless certain steps shall have been taken by the transferee.

The business of Messrs. Leibowitz Bros., Inc., was the selling at retail of ladies' shoes, for which purpose they had at one time four shops in the Bronx. At the time of the sale, March 1, 1933, I believe it is testified they had three shops.

It seems to me perfectly clear by contrasting the kind of business which Mr. Rosenwasser did, and the kind of business which Leibowitz Bros., Inc., did that the latter's business was not selling of "close-outs" or odds and ends. Mr. Rosenwasser, the defendant, on the other hand, for many years has bought stocks of such "close-outs" and odds and ends and has sold them again, and, if it was a question of a sale by Mr. Rosenwasser to some other person of the very goods which he had bought here, I would say it was in the ordinary course of his trade and in the regular prosecution of his business.

But in the present case I do not think that by any fair construction of the statute I could say that the sale of these "close-outs" to the extent of about 5,000 pairs of shoes could be considered as within the ordinary course of trade and the regular prosecution of the business of Leibowitz Bros., Inc.

There was an attempt made by Samuel Leibowitz, when he was on the stand, to show that there was a regular habit in his business to sell these "close-outs" periodically. At first, on cross-examination by defendant's counsel, he suggested such sales were semi-annual. Defendant's counsel was warned when he started to examine him on this question that he would make the witness his own, and, consequently, when the redirect examination began I allowed it to become in effect cross-examination, and on that Leibowitz noticeably wavered. I do not believe his story as to any periodical "close-outs" sales. He did not make a good impression on me. I did not think he testified with candor and honesty, and I think that the most which possibly could be said with regard to the sale of "close-outs" by Leibowitz Bros., Inc., was that it might have been an incident, and, no doubt, a convenient incident of their business—perhaps of any retail business—but it was not, properly speaking, in the ordinary course of any retail trade or the regular prosecution of such retail business.

IV. The fact that I have found the sale was not in the ordinary course of Messrs. Leibowitz' business necessarily means that any one who made a purchase of such "close-outs" at such a sale was doing it at his own risk. The risk that he ran, of course, was that there might be a supervening insolvency or bankruptcy of his seller, and he would be called to account by the creditors of the latter. It would be perfectly possible for a purchaser in bulk to protect himself by complying with the provisions of section 44, so that the result is, as has been pointed out in some of the cases, that honest business is not interfered with by this statute, which merely made a provision, the intention of which was to do away with some sources of fraud on creditors which had long troubled the commercial community.

V. The history and purpose of the Bulk Sales Act is admirably given, it seems to me, in the dissenting opinion of Judge Vann in the case of Wright v. Hart, 182 N. Y. 330, beginning at page 346, 75 N. E. 404, 2 L. R. A. (N. S.) 338, 3 Ann. Cas. 263. In that case the first Bulk Sales Act, Laws of 1902, chapter 528, was under consideration, and the majority of the court held that for the reasons stated in their opinion the act was unconstitutional. The second Bulk Sales Act, now Personal Property Law, § 44, was passed as chapter 507 of the Laws of 1914, and its constitutionality was supported by the decision of the Court of Appeals in the case of Klein v. Maravelas, 219 N. Y. 383, 114 N. E. 809, L. R. A. 1917E, 549, Ann. Cas. 1917B, 273, wherein Judge Cardozo adopted and approved the dissenting opinion of Judge Vann in Wright v. Hart, 182 N. Y. 330, 75 N. E. 404, 2 L. R. A. (N. S.) 338, 3 Ann. Cas. 263.

VI. In view of the fact that I have arrived at a definite conclusion in this case, I shall decide it now, for it would take a longer time than would be appropriate in the great pressure of our calendars at the present time to write a more considered opinion or at-

tempt to differentiate between the various New York cases; but as to one aspect of the matter I think I should say something further now, although something was said of it in the early part of the trial.

■ The point to which I refer is the question of whether this case should properly have been entertained by me as an equity case or whether I should have remanded it to the law calendar. The controversy between Klein and Maravelas, which involved the case just referred to, in which Judge Cardozo rendered the decision, was somewhat interesting because it first was brought as an action at law founded on the Personal Property Law, § 44, and was dismissed as an action at law by the Appellate Term of the Second Department, in the case of Klein v. Maravelas, 89 Misc. 466, 152 N. Y. S. 584. The court there called attention to the fact that what the statute really created was a kind of judgment-creditor action without the necessity of first obtaining a judgment against the primary debtor, and that therefore it fell within one of the time-honored jurisdictions of equity. For that reason I kept it on the equity calendar here, and have dealt with it accordingly, and have given an equitable form of remedy.

■ VII. I find the goods have been disposed of by Mr. Rosenwasser, and that he cannot possibly deliver them back in kind, and I merely declare that they constituted a trust res, in the first instance, and consequently, having disposed of that res, Mr. Rosenwasser must make an accounting therefor.

VIII. With regard to the ultimate amount for which the decree should be entered herein, I think that it would be very easy for counsel to agree, if they wish to do so, but I do not feel that I have the exact figures before me now.

In view of the representations that have been made to me by counsel for the trustee that the trustee will probably be saddled with the expense of any accounting in the event they were not able to make a recovery against the defendant, I will allow the question of the accounting, unless the figures can be agreed, to be brought on before me at some time convenient to me on at least three days' notice to the defendant's counsel.

I have indicated in my decision at the commencement of this opinion the form of the decree which should be entered, and, if counsel have other views or wish to suggest any additions to or modifications of the views I expressed there, they can be dealt with on the settlement of the final decree which should be made on notice.

Any further proceedings after decree may be brought before me.

IX. This opinion may stand as findings of fact and conclusions of law in this cause.