WILLIAM A. GEIGER, as Trustee in Bankruptcy of MINNIE ROSEN-FELD, Bankrupt, Plaintiff, *v.* LOUIS YASSER, INC., MAX GROSS, ALEX. LIEBERMAN, Doing Business as A. LIEBERMAN Co., JULIUS BREITTHOLZ and PAUL BREITTHOLZ, Doing Business as BREITTHOLZ BROS., Defendants.

Supreme Court, Special Term, New York County, May 6, 1942.

*J. Sherman Brimberg,* for the plaintiff.

*Martin M. Gelber,* for the defendants Louis Yasser, Inc., and Max Gross.

*Jacob Stein,* for the defendant Lieberman.

*Edward L. Coffey,* for the defendants Breittholz.

HOFSTADTER, J. This is an action by the trustee in bankruptcy of Minnie Rosenfeld to recover from the named defendants the value of merchandise alleged to have been transferred to them by the bankrupt in violation of the Bankruptcy Act and the Bulk Sales Law. (Pers. Prop. Law, § 44.) At the trial the action was discontinued against Louis Yasser, Inc.

Both the plaintiff and defendants are in substantial agreement as to the facts; they differ only in the inferences to be drawn therefrom. Minnie Rosenfeld was the owner of a retail fur shop in Flint, Mich. The defendants are fur coat wholesalers and jobbers in New York city. In 1938 the bankrupt purchased various fur coats from each of them on credit. It is not open to dispute that these transactions were absolute and unconditional sales. Rosenfeld began to have difficulty in meeting her obligations to these and other creditors, and in order to preserve her credit in New York, in March, 1938, her husband and son came here from Michigan to call a meeting of local creditors to discuss the situation. The creditors were informed that owing to an automobile strike the debtor was having some difficulty in collecting her accounts receivable, which constituted the bulk of her business; that she was, therefore, short of ready cash but that she had a large stock on hand and was otherwise solvent. The Rosenfelds suggested that as the strike might continue for a long time, the creditors present could have their merchandise back if they preferred not to wait for payment of the purchase price at some future date. The defendants herein chose to adopt this suggestion and an agreement was duly entered into. By this writing the creditors accepted eighty-five per cent of the debts due them in full settlement of their claims and it was provided that " the said 85% is to be paid by the return to us of merchandise heretofore sold by us to Minnie Rosenfeld, doing business as Rosenfeld Furs, to the extent of 85% of the invoice price of the said merchandise."

Pursuant to the terms and provisions of this agreement the debtor did return merchandise purchased from each of the defendants. Within three weeks after the date of these transfers Rosenfeld filed a petition in bankruptcy. The trustee appointed in that proceeding now seeks to set aside the transfers on the ground that they were preferences in violation of the Bankruptcy Act.

Section 60 of the Bankruptcy Act (U. S. Code, tit. 11, § 96) defines a preference as a transfer of the property of the debtor made while insolvent and within four months before the filing of a petition in bankruptcy " the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class." The same section permits the trustee to avoid the transfer " if the creditor receiving it * * * has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent."

It cannot be disputed that these defendants actually received preferential treatment as against other creditors of the same class by these transfers made within four months of bankruptcy; and the only seriously disputed issue is whether they knew or should have known of the insolvency of the debtor at the time.

The evidence establishes that the debtor was insolvent at the time of the transfers and I am clear that the defendants had reasonable cause to believe so. The mere fact that the debtor represented that she was solvent is not determinative of the issue; nor is it material that the creditors may not have actually known her true financial condition. The test is only whether they had " reasonable cause to believe that the debtor is insolvent." (See 3 Collier on Bankruptcy [14th ed.], p. 989.) A creditor may not ignore the compelling inferences arising from actions taken by his debtor and blindly accept a preferential payment merely in reliance on the representations of the debtor as to her solvency. The preferential transfer is void if the circumstances surrounding it place the creditor on inquiry. In the instant case such inquiry would have disclosed insolvency; indeed a petition in bankruptcy was filed only three weeks later. The fact that the defendants had attended a meeting of creditors and in settlement of their respective obligations took back merchandise and allowed the debtor a fifteen per cent discount creates enough suspicion to have prompted a reasonable man to investigate further.

In *Bossak & Co.* v. *Coxe* (285 Fed. 147) in a similar case the court held: "A transaction whereby a merchant creditor satisfies his debt in consideration of the transfer to him by the debtor of goods worth only half the amount of the debt certainly is not one in the usual and ordinary course of mercantile business. * * * Such an unusual occurrence is *prima facie* evidence of fraud, and was enough to indicate that appellant had information as to the debtor's financial condition, and to cast on the appellant the burden of sustaining the validity of the transaction."

Upon the whole record made upon the trial I am clear that the defendants had reasonable cause to believe that Rosenfeld was

insolvent at the date of the agreement. While the defendants may have acted in utter good faith, that state of mind is no defense to this action. The net result is that they have received payment of eighty-five per cent of their claims at a time when the debtor was insolvent and under circumstances that would lead a reasonably prudent man to be aware of that fact; *while seventy other creditors similarly situated have received no payment whatsoever.* The inequity is apparent and the Bankruptcy Act, which contemplates that all creditors of the same class be on a parity, condemns the transactions as preferential and violative of its provisions.

While the cause of action under the Bulk Sales Law becomes academic in view of this determination, it may not be amiss to advert to the matter briefly.

The question tendered is whether these transactions are within the intendment of the Bulk Sales Law, since it is conceded that there has been no purported compliance with its provisions.

By the terms of section 44 of the Personal Property Law (and the Michigan Bulk Sales Law [Mich. Stat. § 19.361]) the sale, transfer or assignment in bulk of any *part* of a stock of merchandise otherwise than in the ordinary course of trade and in the regular prosecution of business, is void unless certain formal requirements set forth in the statute are complied with.

By these transfers the debtor disposed of a substantial part of her stock of merchandise. The transfers were not in the ordinary course of retail business and they resulted in an absolute preference as against other creditors with equal rights. Bearing in mind that the statute must be reasonably construed to carry out its avowed purpose to provide protection and a remedy for creditors against such acts by a debtor, it is clear that the instant transfers are within its terms.

I reject the contention of the defendants that the return in bulk of merchandise by a buyer to a seller is not within the statute. While there are no reported cases on the subject in this jurisdiction, I am in accord with the statement by Billig and Branch in their article on "Transfer under Bulk Sales Laws" appearing in 35 Michigan Law Review, 732: "A transfer of goods is none the less a preferential transfer because it is made to one from whom the identical goods were previously purchased and because it is made in acquittance of the obligation incurred by such purchase. That is if S sells goods to B who subsequently returns them to S because of his inability to pay therefor, such a return is a preferential transfer on the part of B." To the same effect see *Gallus* v. *Elmer* (193 Mass. 106; 78 N. E. 772.)

The plaintiff has established a cause of action both under the Bulk Sales Law and the Bankruptcy Act and he may have judgment accordingly against the defendant Max Gross in the sum of $971.50; the defendant Alex Lieberman in the sum of $272.50; the defendant Paul Breittholz in the sum of $434.24; together with interest on each amount from April 7, 1938.

Findings of fact and conclusions of law having been sufficiently indicated in this opinion, a formal decision is hereby dispensed with. Settle decree accordingly.