### NEW YORK CREDIT MEN'S ASS'N, Inc., v. DOMESTIC BROADTAIL PRODUCERS, Inc.

District Court, S. D. New York.
May 16, 1945.

I. Jonas Speciner, of New York City (Lewis Herman, of New York City, of counsel), for plaintiff.

Davidson & Mann, of New York City (Harvey T. Mann, of New York City, of counsel), for defendant.

CONGER, District Judge.

The plaintiff, as trustee in bankruptcy of Joseph H. Polish, Inc., sues upon two causes of action, alleging respectively, violations of sections 60, sub. a, and 60, sub. b, of the Bankruptcy Act, as amended, 11 U.S.C.A. § 96, sub. a, and sub. b, and of section 44 of the Personal Property Law of New York, Consol.Laws N.Y. c. 41, commonly known as the "Bulk Sales Law."

The facts are not in dispute. The sole record is based upon testimony taken in an examination of the defendant's general manager before a referee in bankruptcy, and certain exhibits.

It appears that bankrupt and defendant were wholesale dealers in furs; that prior to January, 1942, the bankrupt had purchased, apparently from time to time, cer-tain skins from defendant. On January 1, 1942, the books of defendant show that bankrupt was indebted to it in the sum of $26,423.44. Then followed the transaction which is now complained of.

In order to give a clear picture of this transaction it might be well to set it forth as it was testified to by defendant's general manager before the referee in bankruptcy and read into the record of this trial:

"Q. Are you familiar with the transactions concerning the return of merchandise by Joseph H. Polish, Inc., the bankrupt, to Domestic Broadtail Producers, Inc., on or about January 19, 1942? A. I am.

"Q. Tell me the circumstances concerning that return? A. The early part of January I went to see Mr. Polish in regard to settling up his account. He told me he had a quantity of lamb skins that he purchased from us which he would like to return for credit. After talking with him he told us the quantity was around $10,000. to $12,000. We agreed to take these back and give him credit at cost price. He also told us at that time the goods were substantially in the same condition as when we had shipped them to him."

This conversation took place on or about January 15, 1942, and pursuant thereto and on or about January 19, 1942, the goods were taken possession of by the defendant. They were physically taken by defendant's chauffeur from the premises of the bankrupt to the premises of defendant. A receipt for the same was given bankrupt, who at the time delivered two itemized statements to defendant listing the merchandise returned and the cost thereof, to wit, a total of 6709 skins at a total cost of $12,803.55.

Later, upon examination it was found that the quality of the skins was not as claimed by the bankrupt; that they were not the original shipment, but inferior odds and ends and leftovers, and the defendant informed the bankrupt in February or March that full credit in the original cost price would not be given. The bankrupt insisted that they were the original lot and requested the credit as agreed. Apparently no further conversations were had in the matter.

In June of 1942 the defendant's accountants suggested that credit for the return of the skins be entered in the books of the company as otherwise there would be sales without corresponding charges, the defendant having disposed of a small portion of the goods at that time. The agreement

104

heretofore mentioned was explained to the accountants, and they suggested an arbitrary reduction of 20% and that credit be given for the remainder, and this was according-ly done on June 29, 1942, the books re-flecting a credit in favor of the bankrupt in the amount of $10,242.84. Credit bills were mailed to the bankrupt and neither party took any further action on the subject.

On July 29, 1942, an involuntary petition in bankruptcy was filed against Joseph H. Polish, Inc., and an adjudication of bank-ruptcy was entered on August 14, 1942.

■ The trustee contends that the trans-action was clearly a preference in contra-vention of § 60, sub. a, and in addition is voidable for non-compliance with § 44, New York Personal Property Law.

I believe the first point may be disposed of easily.

Section 60, sub. a, states in part that a "preference is a transfer * * * of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition in bankruptcy, * * * the effect of which transfer will be to enable such creditor to obtain a greater percent-age of his debt than some other creditor of the same class."

In applying this part of the statute it is clear that the return of the skins on Janu-ary 19, 1942, over six months before the filing of the petition in bankruptcy, is not within its purview unless some other fac-tor changes the effect of the transaction.

The trustee argues that the issuing of credit only a month before the filing of the petition is such a factor. I think not.

Both parties treat the transaction as a resale, which it was, and contest the ques-tion of when the title to the skins passed. If title passed when the credit was issued, then the transaction effected a preference; if it passed upon the return date, the stat-ute is inapplicable, it is said.

The answer to the issue is found in the definition of a "transfer."

Section 1(30) of the Bankruptcy Act, 11 U.S.C.A. § 1(30), states that a " 'transfer' shall include the sale and every other and different mode, direct or indirect, of dis-posing of or of parting with property or with an interest therein or with the pos-session thereof or of fixing a lien upon property or upon an interest therein, ab-

solutely or conditionally, voluntarily or in-voluntarily, by or without judicial proceed-ings, as a conveyance, sale, assignment, payment, pledge, mortgage, lien, encum-brance, gift, security, or otherwise."

Now it is certain from the plain terms of this section that the return of the skins was a "transfer" more than six months be-fore the filing of the petition, and it is of no significance what the transaction is de-nominated, whether a sale or something else. It was a "transfer."

This view is fortified by the concluding portion of § 60, sub. a, which states that: "For the purposes of subdivisions a and b of this section, a transfer shall be deemed to have been made at the time when it be-came so far perfected that no bona-fide purchaser from the debtor and no creditor could thereafter have acquired any rights in the property so transferred superior to the rights of the transferee therein, * * *."

The possession of the goods on and after January 19, 1942, would have been effec-tive even as a pledge against any third parties by reason of the fact of the out-standing debt existing at the time.

The trustee would make much of the fact that in April, May and June, the de-fendant was aware of certain judgments against the bankrupt, but these were en-tered after the transfer, and do not indicate any fraudulent motive, especially in view of the fact that no proof of actual fraud was offered.

The case of J. Landis Shoe Co. v. Hud-son, 8 Cir., 32 F.2d 897, decided the ques-tion of the time of passage of title for the reason that some of the merchandise in that suit was shipped within the four month limit. It doesn't help plaintiff here. Inci-dentally in this case it was stated that entry of credit on the books of the respective parties was not material.

I hold that there is no violation of sec-tions 60, sub. a, and 60, sub. b, of the Bank-ruptcy Act.

■ The plaintiff's second point is more difficult.

Originally, it pleaded only the cause of action involving the Bankruptcy Act, and the case was tried on that theory. After trial and before decision, the plaintiff was granted permission to amend its pleading to conform to the proof, and a second cause of action involving § 44 of the New York Personal Property Law was added. At my

suggestion, plaintiff served an amended complaint to which defendant answered. I also gave defendant permission to submit additional proof if he so desired. Naturally in the evidence on the trial there would not be formal proof of a violation of § 44, but the defendant has conceded that it made no compliance with the statute, claiming that the transaction never was a bulk sale as contemplated by § 44. It is obvious from the record that there were creditors at the time of the transaction who still remain such. At any rate I feel I should dispose of the question on the merits.

Section 44(1) declares that the "sale, transfer or assignment in bulk of any part or the whole of a stock of merchandise or of fixtures, or merchandise and of fixtures pertaining to the conducting of the business of the seller, transferrer or assignor, otherwise than in the ordinary course of trade and in the regular prosecution of said business, shall be void as against the creditors of the seller, transferrer or assignor * * *" unless certain steps are taken to notify creditors of the impending transfer, and to give them opportunity to protect their interests if threatened.

The facts then present two problems: Was this a sale in bulk? Was it without the ordinary course of trade?

There seems to be no authoritative decisions in New York which directly define a bulk sale. In all the cases that have come to my attention, the entire stock, or substantially the entire stock, of the merchant was transferred. But the phrase "any part or the whole" is certainly subject to the interpretation that the size of the transfer is insignificant. However, without deciding this point, I think the decision may rest on the answer to the second question.

"Ordinary course of trade" has not been construed with uniformity by the courts of the various states, and New York again appears to lack authority on the point.

■ It has been said that "this inquiry is essentially an issue of fact depending upon the nature of the seller's business, his ordinary method of making sales, and his indebtedness." Hart v. Brierly, 189 Mass. 598, 601, 76 N.E. 286, 287; and cf. Irving Trust Co. v. Rosenwasser, D.C., 5 F.Supp. 1016; and this seems to be a logical rule. Conceivably, a sale by one merchant in the ordinary prosecution of his particular business would not be considered normal conduct by a different type of merchant engaging in a similar transaction. See Shasta Lumber Co. v. McCoy, 85 Cal.App. 468, 259 P. 965.

An excellent analysis of bulk sales statutes in 35 Mich.L.Rev. 732 includes the following at page 737:

"The cases which have decided that a particular transaction was or was not out of the ordinary and usual course of the business of the seller have one common element; the sale or transfer was made to one who was not a member of the general class of buyers to whom the business customarily catered. While this determination of the buyer's character is by no means to be understood as a complete test, nevertheless, it is a most persuasive element in the decisions."

A study of the New York cases substantiates this proposition.

■ In the instant suit, both parties were wholesalers. The bankrupt suggested the return of certain skins for credit. He had evidently used many of the better skins in the lot. The defendant accepted the skins. I find it impossible to hold as a matter of fact or law that this was not in the ordinary course of the bankrupt's trade. The parties had had dealings before. If the defendant had suggested the return of the skins because of a pressing need for them, no complaint would be made. The actual situation appears no different. I find in view of all the circumstances that the transfer was not without the ordinary course of the business of the bankrupt, and that therefore, compliance with § 44 was unnecessary.

The situation in Geiger v. Louis Yasser Inc., 178 Misc. 526, 35 N.Y.S.2d 221, affirmed 265 App.Div. 1046, 40 N.Y.S.2d 332, was obviously different. In addition the discussion of this point was "academic."

Complaint dismissed and judgment for defendant.