RITCHIE GROCER COMPANY *v.* SANDERS.

5-997                                                          294 S. W. 2d 54

Opinion delivered October 15, 1956.

*O. E. Gates* and *Gaughan, McClellan & Laney,* for appellant.

*Wayne Jewell,* for cross-appellant and *Robert C. Compton, Walter L. Brown* and *J. Bruce Streett,* for appellee.

J. SEABORN HOLT, Associate Justice. Prior to November 9, 1953 appellee, B. M. Ritchie, operated a mercantile business at Hampton, Arkansas, and on this date he sold the business, fixtures and merchandise to W. D. Sanders. On this same day Ritchie took Sanders' note for $8,100 payable in sixty monthly installments of $135 each and to secure payment of the note Sanders executed a chattel mortgage covering the fixtures, which were particularly described, and ''also, my entire stock of merchandise, now in my store in the Ritchie Building, and that which may hereafter be stocked from time to time in said building, in Hampton, Arkansas.'' This mortgage was duly recorded and at the time it was executed both B. M. Ritchie (mortgagee) and Sanders (mortgagor) owed no debts.

Sanders took over the business on November 9, 1953 and proceeded to operate it until February 17, 1954, when he delivered the fixtures and merchandise back to Ritchie and thereafter Ritchie operated the business, selling and disposing of the merchandise and stock in the regular course of retail trade. During the time that Sanders operated the business he purchased groceries and merchandise from appellants, Ritchie Grocer Co., South Arkansas Grocer Co., and Robert Mays Wholesale Grocer Co., which merchandise he co-mingled with his stock for retail sale and at the time when he delivered the merchandise and fixtures back to Ritchie, he, Sanders, was indebted to Ritchie Grocer Co. in amount of $749.51, South Arkansas Grocer Co. in amount of $566.48 and Mays Wholesale Grocer Co. in amount of $438.06. When Sanders delivered the stock of merchandise and fixtures back to Ritchie (February 17, 1954) no effort was made to comply with our bulk sales law, § 68-1501-1504 incl., Ark. Stats. 1947.

When appellants learned that Sanders had returned the business and merchandise to B. M. Ritchie, as indicated, they filed the present suit against Sanders and Ritchie, in which they alleged that when W. D. Sanders transferred and delivered to B. M. Ritchie his entire stock of merchandise and fixtures on February 17, 1954, there was no compliance with the bulk sales law and that such delivery of said stock of goods was in fraud of creditors; that Sanders was wholly insolvent and had made no provisions to pay his accounts to appellants or to his other creditors, and prayed for the appointment of a receiver to take possession of the stock of goods, merchandise and fixtures, to be administered for the benefit of Sanders' creditors. At this point it appears that by agreement B. M. Ritchie was allowed to execute a bond in the amount of $2,000 to protect the creditors of Sanders, which was done, and the receiver, previously appointed by the court, was authorized to return the fixtures and merchandise to B. M. Ritchie. Appellee Sanders filed answer and cross complaint. A trial resulted in a decree holding that the delivery of the stock of goods, merchandise and fixtures from W. D. Sanders to B. M. Ritchie was not in violation of the bulk sales law; that Ritchie was not responsible to the creditors of Sanders under the bulk sales law; and that there was ''no liability on the part of B. M. Ritchie and his surety on the bond set forth in the court's order of March 10, 1954. The court finds that the receiver has collected some accounts owing to W. D. Sanders and has received other monies and has incurred expenses in performing his duties as receiver, and that a final settlement should be made and the receiver discharged,'' . . . and decreed ''that the plaintiff, Ritchie Grocer Company have judgment against the defendant, W. D. Sanders in the sum of $749.51 with interest from March 23, 1955; that South Arkansas Grocer Company have and recover judgment against the defendant, W. D. Sanders, in the sum of $566.48 with interest from March 23, 1955; that Robert Mays Wholesale Grocer Company have and recover judgment against the defendant, W. D. Sanders in the sum of $438.06 with interest from March 23, 1955; that the cross complaint of W. D. Sanders against B. M. Ritchie and against Ritchie Grocer

Company and South Arkansas Grocer Company be, and the same is dismissed for want of equity; that the cross complaint of B. M. Ritchie against Ritchie Grocer Company and South Arkansas Grocer Company be, and the same is dismissed for want of equity; that the plaintiff's complaint and the intervention of Robert Mays Wholesale Grocer Company as against B. M. Ritchie be dismissed for want of equity and that the bond in the sum of $2,000 given by B. M. Ritchie with John Dawson as surety thereon, be and the same is cancelled and held to be of no effect and the title to the stock of goods, merchandise and fixtures referred to in the complaint be quieted and confirmed in the defendant, B. M. Ritchie, as against all parties in this suit.''

For reversal appellants stoutly contend that ''the transfer and delivery of the stock of goods, merchandise and fixtures by the debtor, W. D. Sanders, to B. M. Ritchie was a violation of the bulk sales law, and that B. M. Ritchie thereby became a receiver of said stock of goods, merchandise and fixtures for the benefit of the creditors of W. D. Sanders,'' and that since Sanders was insolvent at the time of the transfer ''and being indebted to B. M. Ritchie, the transfer of his assets consisting of the stock of goods, merchandise and fixtures to B. M. Ritchie was a fraud upon these plaintiffs who were his creditors,'' and that the court erred in denying appellants, and the creditors, recourse against the bond of the receiver, B. M. Ritchie.

After a review of the record we have concluded that in the circumstances here the trial court erred in holding that the provisions of our bulk sales law were inapplicable to the transfer of the stock of groceries and the decree must be reversed for this reason. The chattel mortgage covering the specifically described fixtures, we hold to be valid and binding, in fact, appellants do not appear seriously to contend otherwise. It is undisputed, as indicated, that at the time these fixtures were mortgaged neither Ritchie nor Sanders owed any debts. Our bulk sales law, § 68-1501-1504, Ark. Stats. 1947 applies to the sale, *transfer*, mortgage or assignment in bulk or any part of a stock of merchandise, otherwise

than in the ordinary course of trade and in the regular prosecution of the business of the seller, and any transfer, mortgage or assignment shall be void against the creditors of the seller, transferrer, mortgagor or assignor unless certain provisions set out in the law are complied with. Here we have the attempt of the mortgagor, Sanders, to transfer and deliver back to Ritchie his stock of merchandise in satisfaction of his pre-existing debt to Ritchie, .at a time when Sanders had incurred the above debts to appellants, wholesale grocers. Since our bulk sales statute above applies to any *"transfer"* we hold that the transfer here, in satisfaction of a pre-existing debt, violated the terms of our bulk sales statute. This appears to be the majority view of the courts in construing bulk sales statutes. In Michigan Law Review, Vol. 35 (1936-37) p. 748, where many cases are collected, we find this language: "A majority of courts, however, give a much broader scope to these laws [bulk sales] and ascribe to them the additional purpose of securing equality among creditors. In conformity with this view, the bulk sales laws are held applicable to a preferential transfer on the theory that one purpose of the statute is to give all creditors of the transferror an ample opportunity to protect their interests before the consummation of the transfer, otherwise the purpose of the act will be defeated. A transfer of goods is none the less a preferential transfer because it is made to one from whom the identical goods were previously purchased and because it is made in acquittance of the obligation incurred by such purchase. That is, if $S$ sells goods to $B$ who subsequently returns them to $S$ because of his inability to pay therefor, such a return is a preferential transfer on the part of $B$."

Sanders has cross appealed and contends that he is entitled to a judgment against B. M. Ritchie for the amount by which he alleges that the inventory of the stock of goods, which he turned back to Ritche, showed a value exceeding Sanders' indebtedness to Ritchie. The chancellor, however, found against him on this contention and we are unable to say that the preponderance of the testimony does not support the chancellor's finding.

He also argues that "Sanders' Accounts Receivable" were wrongfully seized and he is entitled to have the accounts returned to him and damages for their wrongful seizure. We hold that the evidence does not support his claim for damages in this connection, but we think in the circumstances that his accounts which remain uncollected should be returned to him. Since, it appears that $77.40 was collected on these accounts, Sanders should also be awarded a judgment for this amount [$77.40].

We hold that the appointment of the receiver in the circumstances was not error. The proof showed that Sanders was insolvent when he transferred the stock of goods back to B. M. Ritchie. Since this transfer was made in violation of our bulk sales law, we hold that B. M. Ritchie is accountable to the creditors of W. D. Sanders, therefore, it was proper and, in fact, necessary that a receiver be appointed to take charge of the assets for the benefit of all the creditors of the insolvent debtor, Sanders. The order of the court directing the receiver, Harold Johnson, to release the fixtures and stock of goods to B. M. Ritchie upon the conditions set forth in the $2,000 bond of Ritchie, appears to have been done in the interest of expediency and the creditors. Accordingly, the decree is reversed with directions to declare the chattel mortgage, given by Sanders to B. M. Ritchie, invalid as far as the stock of goods is concerned; that the transfer of the stock of goods by W. D. Sanders to B. M. Ritchie violated the terms of our bulk sales law above and to hold B. M. Ritchie accountable under his bond to appellants for the full amount of their claims against W. D. Sanders, and for any further proceedings consistent with this opinion.