367 P.2d 187

C. V. BRANHAM, Plaintiff and Appellant,

v.

Tom J. JACKSON and Vera M. Jackson, Defendants and Respondents,

Berlin Glove Company et al., Intervenors and Respondents.
No. 9412.

Supreme Court of Utah.

Dec. 15, 1961.

Pickett & Pickett, St. George, for appellant.

Elias Hansen, Salt Lake City, LeRoy Cox, St. George, for intervenors and respondents.

CALLISTER, Justice.

Plaintiff commenced an action to obtain possession of certain premises, merchandise, furniture, fixtures and equipment in accordance with the terms of a written "Agreement of Sale" between plaintiff and the insolvent defendants. The intervenors are, from all that appears in the record, general creditors of the defendants. From a judgment which denied him preference, except as to certain fixtures, over the general creditors, plaintiff appeals. Intervenors cross-appeal from that part of the judgment granting plaintiff a preference as to the fixtures and from that part of the judgment awarding plaintiff certain expenses and attorney fees. The defendants have neither appealed nor cross-appealed.

On July 18, 1958, the plaintiff entered into an "Agreement of Sale" with the defendants for the sale and purchase of plaintiff's mercantile business in St. George, Utah. By the terms of the agreement, the plaintiff assigned his lease to the store building and sold and delivered possession of the stock of merchandise, furniture, fixtures and equipment to the defendants. The purchase price was $18,648.59, payable $5,000 upon execution of the agreement and the balance at not less than $200 per month, with interest at the rate of 6% per annum upon the unpaid balance.

The agreement, which was filed in the Washington County Recorder's Office, also provided, among other things, that, "In the event Jacksons fail, neglect or refuse to comply with each and all of the covenants herein made for their observance that Branham may declare a breach of this agreement and go into possession of said

premises and property as in the first instance, * * *" Also, that, "In the event of any controversy relative to the compliance with the terms hereof, the party at fault agrees to pay any damages suffered by the innocent party, including reasonable attorney's fee if an attorney is employed on account of such controversy."

The defendants went into possession on August 1, 1958, and commenced operating the business under the trade name of "Frontier Shop."

On February 13, 1959, plaintiff filed an action seeking to compel the defendants to comply with the provisions of the agreement relating to maintaining the inventory at a certain cost level, obtaining and keeping in force insurance, examination of books, etc. The record does not disclose what, if anything, took place in this matter. Subsequently, on June 12, 1959, plaintiff filed an amended complaint wherein he alleged various breaches of the agreement, including default in the monthly installments and the insolvency of the defendants, and prayed for an order permitting him to take possession of the store and stock of goods. He also prayed for costs and attorney fees in the sum of $350. By an order, dated June 17, 1959, the lower court temporarily restrained the defendants from preventing the plaintiff from taking immediate possession of the store, merchandise, furniture, fixtures, and equipment. Plaintiff thereupon took possession of the business.

On June 29, 1959, the defendants filed an answer and counterclaim to which plaintiff filed a reply on July 21, 1959.

A hearing was had in the lower court on July 30, 1959, at which time an oral stipulation was entered into by plaintiff, defendants, and Mr. Cox, an attorney then representing three creditors (not then parties to the action) of the defendants. The stipulation provided that the plaintiff should continue in possession of the business, liquidate the same, and place the proceeds in a trust account; that the defendants assign to plaintiff, for the benefit of their creditors, all of the assets of the business; and that plaintiff, after first deducting the expenses of liquidation and satisfying his claim, pay the remaining balance of the proceeds realized from the liquidation to the defendants' creditors. The defendants never executed a written assignment for the benefit of the creditors.

Further hearings were had on September 22, 1959, and October 28, 1959. From the record it appears that the defendants made no further appearances in the proceedings after the last-mentioned hearing.

On December 14, 1959, the intervenors filed their complaint in intervention. Until this time they had not been formal parties to the action, although their attorney had been present at the aforementioned hearings. By this time plaintiff had evidently completed the liquidation.

The complaint in intervention prayed that the court require plaintiff to make an accounting; that the proceeds of the liquidation be impounded; and that the court determine the amounts due and to be paid intervenors.

Plaintiff filed an answer to the complaint in intervention which contained an accounting. This accounting was to the effect that the gross receipts were $19,669.02, and that, after deducting $3,012.28 for expenses and $12,207.47 due plaintiff, there was a balance of $4,449.27 to be distributed among the creditors. Plaintiff also asserted that he was entitled to compensation for his services and for attorney fees. Intervenors filed a reply denying the accuracy of the accounting, denying plaintiff's right to compensation or attorney fees, and asked that the reported account be disallowed.

A trial was had upon the issues and the court thereafter made findings and entered its judgment accordingly. The court found, among other things, that the assignment by the defendants to the plaintiff of the assets of the business, made pursuant to the oral stipulation in court on June 30, 1958, was not in compliance with the Bulk Sales Act [1] and therefore concluded that it could not operate to give plaintiff a preference over the other creditors.

The trial court also found that the merchandise received by defendants from plaintiff at the time of purchase of the business had been commingled with merchandise subsequently purchased by defendants and could not be identified or segregated. It therefore concluded that plaintiff could not maintain a claim of title or preference, under the agreement of sale, to the stock of merchandise which was delivered to him by virtue of defendants' assignment.

With regard to the proceeds received from the liquidation, the court allowed as preferred claims: $2,662.28 for expenses of liquidation; $977.50 to compensate plaintiff and his wife for services rendered; $350 for attorney fees; $911 to plaintiff for fixtures sold; and, $423.19 for labor claims. There remained the sum of $14,344.99 which the court ordered distributed ratably among the creditors, including plaintiff. The plaintiff's share amounted to $5,718.01.

We are first confronted with the trial court's determination that the assignment by the defendants, pursuant to the stipulation, was a transaction within the purview of the Bulk Sales Act. With this we cannot agree. It seems that there is an apparent conflict in the authorities as to whether the return of merchandise to the original seller in satisfaction of the purchase price is a transaction falling under a bulk sales law.[2] However, in most of the cases holding such a transaction to be within it, the bulk sales act involved contained

1. 25–2–1 et seq., U.C.A.1953.

2. Anno.: 59 A.L.R.2d 1115.

language broad enough to cover such a situation, such as, "sale, transfer, mortgage or assignment."[3] Our act contains the more restrictive language, "It shall be the duty of every person who shall bargain for or purchase," etc. It can hardly be contended that the assignment in the instant case was a "bargain" or a "purchase" by the plaintiff.[4] It should also be noted that the assignment and delivery of the assets came after plaintiff commenced his legal action to obtain their possession.

Nowhere in the pleadings or in the incomplete record does it appear that any party to the action ever assailed the validity of the assignment on the ground of noncompliance with the Bulk Sales Act or, for that matter, on any other ground. Furthermore, the intervening creditors did not file their complaint in intervention (in which there was no mention of the Bulk Sales Act) until after the plaintiff, acting under the assignment, had disposed of the assets. Even though the Bulk Sales Act had been applicable to the transaction, the intervening creditors are probably estopped from asserting it.[5]

From aught that appears from the record, none of the intervening creditors have any preferential claims. They appear, with the exception of the labor claimants, to be in the category of general creditors. For the most part they are comprised of unpaid sellers who have lost their liens.[6]

This brings us to the finding and conclusion of the lower court that the goods had been commingled and that the plaintiff could not maintain his title or preference to them because he could not identify or segregate the goods which he had transferred to the defendants by virtue of the "Agreement of Sale."

The validity of this agreement between plaintiff and defendants has not been assailed or questioned. It provides that the plaintiff, upon default, could take possession of the business and its assets, including after-acquired property or merchandise. In the absence of any showing to the contrary, the plaintiff had a valid lien on this after-acquired property[7] which had preference over the general creditors.

It thus follows that the plaintiff is entitled to be paid in full his claim before the intervening general creditors may participate in the proceeds realized from the liquidation of defendants' business.

With respect to the award of attorney fees and compensation to plaintiff and his

3. Cf. Ritchie Grocer Co. v. Sanders, 226 Ark. 775, 294 S.W.2d 54, 56, 59 A.L.R.2d 1110.
4. See Englewood State Bank v. Tegtman, 85 Colo. 340, 275 P. 935.
5. 15 A.L.R.2d 937.

6. 60-4-5, U.C.A.1953: "(1) The unpaid seller of goods loses his lien thereon: * * * (b) When the buyer or his agent lawfully obtains possession of the goods."
7. 33 Am.Jur. p. 425.

wife, the terms of the agreement amply support the lower court's action.

Reversed and remanded to enter judgment in accordance with the views expressed in this decision.

Costs awarded to plaintiff.

WADE, C. J., and HENRIOD, McDONOUGH and CROCKETT, JJ., concur.