446 P.2d 687

**DEL E. WEBB HOTEL CO., an Arizona corporation, and HiwayHouse, Inc., an Arizona corporation, Appellants,**

v.

**Burton M. BENTLEY; James H. Weller and Weller Painting Co., Appellees.**

**No. 1 CA-CIV 470.**

Court of Appeals of Arizona.

Oct. 31, 1968.

Rehearing Denied Dec. 2, 1968.

Review Denied Jan. 14, 1969.

Moore, Romley, Kaplan, Robbins & Green, by Craig R. Kepner, Phoenix, for appellants.

Jennings, Strouss, Salmon & Trask, by Nicholas Udall, Phoenix, for appellees.

MOLLOY, Judge.

This case raises questions of priority of claims as to a stock of alcoholic liquor which was levied upon by Bentley and Weller, execution creditors of HiwayHouse Hotels, Inc. The liquor, at the time of the levy, was in possession of the appellant Del E. Webb Hotel Co.

The case was tried to the court without a jury. The facts were developed almost exclusively by stipulations dictated into the record by counsel. The stipulations reveal that Del E. Webb Hotel Co. was the mortgagee under six or seven mortgages encumbering leasehold interests in various hotels and chattels, which mortgages were given to secure promissory notes of Hiway-House Hotels, Inc. HiwayHouse became in default as to its payments under these notes and on April 10, 1963, it turned over possession of some or all of the property covered by these mortgages to Webb Hotel Co. Part of the property included the HiwayHouse Hotel on East Van Buren Avenue, Phoenix, Arizona, and a stock of alcoholic liquor situated in this hotel, which liquor is the subject of this action. Many of the circumstances pertaining to the delivery of possession from HiwayHouse to Webb Hotel remain undisclosed by the record.

Within a few days of this transfer of possession, the United States Government served a notice of levy upon Webb Hotel Co. in the sum of $11,058.02 for delinquent payroll taxes due from HiwayHouse. On April 20, 1964, Webb paid this amount to the Internal Revenue Service and Webb claims a lien on this liquor because of this payment.

Within a few days after this payment, the appellees, Bentley and Weller, judgment creditors of HiwayHouse, caused writs of execution to be levied upon this supply of liquor. Webb made claim in the civil actions in which these writs were issued that it was the owner of the property levied upon and there was a joinder of issue between the parties as contemplated by A.R.S. § 12–1331 et seq. The judgment below found in favor of the levy and rendered judgment against Webb upon its redelivery bond.

Webb presents three questions for review, the answers to which it contends, in the alternative, require a reversal of the judgment below. The appellees respond that A.R.S. § 44–1021, commonly known as the Bulk Sales Act, is a complete answer to all of these contentions. This act, since repealed but in effect at the time of this transaction, reads:

"A. No person in the business of buying commodities and selling them in small quantities for purposes of profit shall, at a single transaction and not in the regular course of business, sell, *assign or deliver* seventy-five per cent or more of his stock in trade, unless he, not less than ten days prior to the sale, *assignment or delivery,* records in the office of the county recorder in the county in which he conducts his business, a notice of his intention to make such sale, *assignment or delivery.* The notice shall be in writing and acknowledged, and shall be published in a newspaper, at least six times if a daily and three times if a weekly, in the county and nearest the place where the vendor conducts his business. The notice shall also be posted in a conspicuous place in plain sight of the public upon the premises during the period of ten days.

"B. Any such sale, *assignment or delivery* made without the recording, publication and posting of notice as pro-

vided in this section, *is void as to all creditors* of the vendor at the time of the sale, *assignment or delivery.*" (Emphasis added)

There is no question here but what the goods delivered over to the possession of Webb Hotel Co. constituted more than 75 per cent of the stock in trade of Hiway-House at the time of delivery. It is agreed that no notices of the proposed delivery were recorded or published as contemplated by this statute and that the appellees were creditors of HiwayHouse at the time of the delivery over of possession. There is no contention made that Webb Hotel's mortgages created a valid lien as to this stock in trade.[1]

The first contention presented by the appellant to reverse is that the above-quoted statute does not apply to a transaction in which stock in trade is delivered over to a creditor in partial satisfaction of a debt. We answer the question, though we note in passing that it has not been stipulated in this record that this particular stock in trade was transferred to Webb in partial satisfaction of any debt.[2]

There is a diversity of authority on the question presented under the many variations of a Bulk Sales Act in this country. See 37 C.J.S. Fraudulent Conveyances § 481 b. We believe part of the diversity of opinion can be explained by the differences in wording of the various statutes, some of which are directed at a "sale" or a "purchase," see e. g., Englewood State Bank v. Tegtman, 85 Colo. 340, 275 P. 935 (1929). Our statute is as broadly phrased ["* * * sale, assignment or delivery * * *"]) as any.

■ Under such a statute, we believe the weight of authority supports the conclu-

sion that the transfer of a stock in trade in partial or full satisfaction of an existing indebtedness is within the act. Ritchie Grocer Co. v. Sanders, 226 Ark. 775, 294 S.W.2d 54, 59 A.L.R.2d 110 (1956); Geiger v. Louis Yasser, Inc., 178 Misc. 526, 35 N.Y.S.2d 221 (1942) (construing Michigan law); Commercial & Savings Bank Co. v. B. F. Goodrich Rubber Co., 124 Ohio St. 369, 178 N.E. 838 (1931); Foster v. Pace Packing Company, 296 S.W.2d 307 (Tex. Civ.App.1956); and see Villig and Branch, the Problem of Transfers Under Bulk Sales Laws, 35 Mich.L.Rev. 732, at 748-49 (1937); and Annot., 59 A.L.R.2d 1115; cf. Branham v. Jackson, 12 Utah 2d 399, 367 P.2d 187 (1961).

■ There is authority regarding a transfer of this nature to be a "sale." Gallus v. Elmer, 193 Mass. 106, 78 N.E. 772 (1906). This transaction is at least a "delivery" of this stock in trade and we see no reason why the statute should not be construed according to its terms. We hold the instant transaction to be within the Bulk Sales Act.

The remaining contentions are that Webb was entitled to be subrogated to the claim of the United States Government for HiwayHouse's payroll taxes paid and that it is entitled to share pro rata in the value of this liquor by reason of deficiency judgments obtained against HiwayHouse in the approximate amount of $718,000. Both of these contentions require a consideration of which party had the burden of proof as to these claims.

A.R.S. § 12–1338 pertains to burden of proof in a proceeding of this kind:

"A. The proceedings on the trial shall be as in other cases before such courts, as nearly as practicable.

---

1. A.R.S. §§ 33–751–752, since repealed, along with our Bulk Sales Act, by the enactment of the Uniform Commercial Code (effective January 1, 1968, A.R.S. § 44–2201 et seq.) declared "fraudulent and void" any mortgage of a stock in trade not accompanied by delivery of possession.

2. In the pleadings, Webb Hotel Co. contended that it was in possession " * * * of unopened bottles of alcoholic beverages having a fair market value of $999.25 under their [Webb Hotel's] own right and of unopened bottles of alcoholic beverages having a fair market value of $1,188.33 as agents for State Mutual Life Insurance Company of America * * *"

"B. If the property was taken from possession of the claimant, the burden of proof shall be on plaintiff. If it was taken from possession of defendant in the writ or any other person than claimant the burden of proof shall be on claimant."

 Reading these two subsections together, we construe them to mean that when a judgment creditor levies upon goods in the possession of other than the judgment debtor, the initial burden is upon the creditor to establish that the ownership rests in the judgment debtor. This can be accomplished, as here, by showing initial ownership in the debtor and that the transfer to the possessor is "void" under the Bulk Sales Act. Once this is done, and if the possessor of the goods makes a claim that by reason of special circumstances he has some claim in the nature of a lien or otherwise, then the burden of establishing such special circumstances would be, as "in other cases," upon the claimant. On the only occasion when a burden of proof problem in connection with this statute was presented to our Supreme Court, it said:

"Under article 10, supra [predecessor statute to A.R.S. § 12–1338], when a third party claims property seized under attachment, and the property at the time of seizure was taken from the possession of any person except the claimant, *the burden of proof of ownership* is upon the claimant." (Emphasis added) Concrete Machinery & Supply Co. v. Waara, 42 Ariz. 512, 517, 27 P.2d 682, 684 (1933).

 As to the subrogation claim, generally, the burden of proof in any subrogation claim is upon the would-be subrogee. 83 C.J.S. Subrogation § 69, at p. 723; 50 Am.Jur. Subrogation § 146, at 775, and see 37 Am.Jur.2d Fraudulent Conveyances § 278, at 931.

Looking at the substantive law of subrogation, we find:

"Subrogation is the substitution of another person in the place of a creditor, so that the person in whose favor it is ex-

ercised succeeds to the rights of the creditor *in relation to the debt.* It is a creature of equity, and was adopted from the Roman and not from the common law. Its purpose is the prevention of injustice and is the mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity and good conscience ought to pay it." Mosher v. Conway, 45 Ariz. 463, 468, 46 P.2d 110, 112 (1935).

It is said that subrogation is not a matter of absolute right but " * * * rather, a matter of grace to be granted or withheld as the equities of the case may demand." 50 Am.Jur. Subrogation § 16, at 693.

Here, we have insufficient facts before us to upset the finding below that subrogation is not merited. While it is established that there was a government levy for $11,-058.22 for payroll taxes, and that Webb paid this amount, beyond this there are no facts to show whether in fairness this amount should be charged against this particular liquor stock. The record is replete with suggestions that Webb Hotel Co. received considerable properties from HiwayHouse as a result of the delivery over of the three hotels which were involved in various mortgages held by Webb Hotel. There were accounts receivable transferred as well as various undisclosed properties, both in Phoenix and in Tulsa, Oklahoma. The value of these other transfers is not established nor is the source of the funds which were used by Webb Hotel to pay this levy shown.

In connection with the transfer, there is an instrument in evidence, prepared by counsel for Webb Hotel Co., which obligates it to:

" * * * advance on behalf of HiwayHouse any sums of money necessary over and above cash accounts receivable and other assets of HiwayHouse necessary to meet *payrolls* of HiwayHouse accruing prior to the entry of Del E. Webb Hotel Co. upon the aforementioned property on April 13, 1964." (Emphasis added)

The levy made by the federal government was paid promptly by Webb Hotel, despite the fact that, if its position in regard to the Bulk Sales Act as taken in this suit were correct, the federal lien would have been subordinate to its rights to this stock of liquor. See §§ 6323 and 6331 of the Internal Revenue Code of 1954, 26 U.S.C.A. §§ 6323 and 6331. This conduct on the part of Webb may have caused the trial court to conclude that payroll taxes were included in the obligation to satisfy "payrolls" of HiwayHouse.

■ Generally, subrogation is allowed only in favor of one who pays the debt of another and there can be no right of subrogation when one pays a debt which he is obligated to pay. 50 Am.Jur. Subrogation §§ 20 and 24, at 695 and 699; 83 C.J.S. Subrogation § 8, at p. 601; and see Klemens v. Badger Mutual Ins. Co. of Milwaukee, 8 Wis.2d 565, 99 N.W.2d 865 (1959), and compare Bank of Marlinton v. McLaughlin, 123 W.Va. 608, 17 S.E.2d 213 (1941).

■ Without knowing the nature or extent of the advantages gained by Webb through its contract with HiwayHouse nor its obligations under the contract, and without knowing the nature and extent of other properties in which Webb Hotel had an interest which were protected by the payment of this levy, nor the source of the funds which paid this levy, we cannot say that the trial court erred in failing to impose a subrogation lien in favor of Webb Hotel on this particular stock of liquor.

We now turn to the last contention, pertaining to the right to share pro rata in the value of this liquor by reason of the deficiency judgment obtained by Webb. In this connection, Webb argues that our Bulk Sales Act is designed to avoid fraudulent transfers but not to favor particular creditors, and that inasmuch as Webb Hotel was not guilty of any actual fraud, but only a technical violation of the act, it should be able to share along with other creditors in the enforcement of the statute. Under Webb's theory, the plaintiffs are entitled to only approximately two per cent of

the value of this liquor stock, for the reason that their total claims were not over $14,-500, while Webb secured deficiency judgments in foreclosure actions totaling over $718,000.

The legal theory propounded by Webb appears to have substantial support in the law. 37 Am.Jur.2d Fraudulent Conveyances § 273, at 926; 37 C.J.S. Fraudulent Conveyances § 280, at pp. 1117–1118; 37 C.J.S. Fraudulent Conveyances § 484, at p. 1349 et seq.; 3 Williston on Sales § 643(c), at 475 (Rev.ed.1948); Calvert Bldg. & Constr. Co. v. Winakur, 154 Md. 519, 141 A. 355 (1928); Annot., 102 A.L.R. 686.

■ But, we find no factual predicate to require a determination of whether this general law is the law of this state. The only claims established in the trial court by Webb to support its equitable claim to share in the value of these goods are deficiency judgments rendered some unspecified time after this transfer. The law appears to be well established:

"The language of the bulk sales acts has been held to refer only to persons who were creditors of the seller at the time of the disputed sale; those whose claims came into existence at a time subsequent to the transaction are held not to be within the purview of the acts."

37 Am.Jur.2d Fraudulent Conveyances § 264, at 916.

And see 37 C.J.S. Fraudulent Conveyances § 479, at p. 1335, and Annot., 85 A.L.R. 2d 1211, at 1214.

There is no stipulation as to what was owing to Webb Hotel by HiwayHouse at the time of this unlawful transfer. There is a stipulation in the record that:

"* * * Webb did, after April 13, 1965 [date of transfer of possession], pay substantial sums of money for payrolls, payroll obligations of Hiwayhouse that were then due, owing and unpaid. It paid on account of taxes that were then due, unpaid and delinquent. It paid to landlords—to the landlords—well, landlords. There were several owners of that

property, the delinquent rent installments. They paid to State Mutual many thousands of dollars—I don't have the exact amounts—on account of delinquent payments on that mortgage to State Mutual."

These sums, together with unspecified sums for attorneys' fees and other costs incurred after this transfer, were all presumably included in the deficiency judgments. In the light of this record, the trial court would have been only guessing if it had fixed any amount as being the Webb claim at the time of transfer. At no time did the trial court in any way cut Webb off from establishing its claim. Accordingly, we see no error in the judgment rendered below.

Judgment affirmed.

HATHAWAY, C. J., and KRUCKER, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.